**UNITED STATES v. CAFFEY, Judge, et al.**

No. 38.

Circuit Court of Appeals, Second Circuit.

March 3, 1944.

Francis M. Shea, Asst. Atty. Gen. (Lester P. Schoene, J. Frank Staley, Ellis Lyons, and George C. Sprague, all of Washington, D. C., and William E. Collins, of New York City, of counsel), for petitioner.

Burlingham, Veeder, Clark & Hupper, of New York City, for respondents.

Chauncey I. Clark, Eugene Underwood, and Bigham, Englar, Jones & Houston, all of New York City, (Leonard J. Matteson, and Richard F. Shaw, all of New York City, of counsel), for intervening petitioner.

Before SWAN, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The sole issue is whether, under the Public Vessels Act of 1925, 43 Stat. 1112, 46 U.S.C.A. §§ 781–790, the District Court of the United States for the Southern District of New York has jurisdiction of a suit in admiralty now pending therein. It was brought by filing a libel in personam against the United States to recover from the government, as in an action in rem, the damages sustained in the total loss of a ship and its cargo in a collision alleged to have been due solely to the fault of a vessel which had been delivered to the British Government under the Lend-Lease Act of 1941, 55 Stat. 31, 22 U.S.C.A. §§ 411–419, and was being operated as a part of the Royal Navy at the time of the collision.

The libel was filed on April 15, 1942, by Agwilines, Inc., as owner of the S. S. Brazos and as bailee of her cargo, in a cause of collision, civil and maritime. Owners and underwriters of the cargo were allowed to intervene and they alleged facts substantially the same as those in the original libel. The government appeared specially and filed exceptive allegations, which were dismissed after due hearing and consideration, and an answer was ordered. Thereupon the government moved in this court for leave to file a petition for a writ of prohibition or of mandamus or both against the District Judge who entered the order and against the other judges and officers of that court. We denied that motion on May 3, 1943, for lack of jurisdiction. A petition for a writ of certiorari was then granted by the Supreme Court, our order was vacated, and the cause was remanded for further proceedings not inconsistent with the opinion of the Supreme Court. Ex parte United States, 319 U.S. 730, 63 S.Ct. 1322, 87 L.Ed. 1693.

The material facts are not disputed. The British Government in April, 1941, requested the United States to provide a ship for it to use as a vessel of war in accordance with the terms of the Lend-Lease Act. The United States Maritime Commission thereupon purchased from a private owner the motor vessel Mormacland, which was reconditioned by the United States Navy to make it suitable for the intended use. Thereafter, and while documented in the name of the American Government, it was delivered to Their Lord Commissioners of the Admiralty on behalf of His Britannic Majesty in accordance with the terms of a receipt dated November 17, 1941, the pertinent provisions of which are as follows:

"Their Lord Commissioners of the Admiralty, on behalf of His Britannic Majesty, hereby accept from the United States Maritime Commission physical delivery of the vessel named 'Archer' (Ex-'Mormacland'), at 11 A. M., Eastern Standard Time, on November 17, 1941 at Norfolk Navy Yard, located at Portsmouth, Virginia, said delivery being made pursuant to the provisions of Public Law 11, 77th Congress, 1st Session, approved March 11, 1941, and statutes amendatory thereof and supplementary thereto, for utilization under charter or other arrangements to be hereafter mutually agreed upon."

The Archer was thereafter commissioned, officered, manned, supplied and operated by the British Government as a unit of the Royal Navy. While in such service she collided with the Brazos on the high seas off the coast of South Carolina on the night of January 13, 1942. The Brazos was sunk in the collision and became a total loss with all her cargo.

Decision on this petition must turn upon the scope of the government's consent to be sued as it is found in the Public Vessels Act, which incorporates by express reference those parts of the Suits in Admiralty Act of 1920, 41 Stat. 525, 46 U.S.C.A. §§ 741–752, which are not inconsistent. The two statutes are to be construed together as part of a plan to give to private owners and operators of vessels the same right of recovery from the government for damages caused by public vessels which they had against each other. State of Maine v. United States, D.C., 45 F.Supp. 35, affirmed, 1 Cir., 134 F.2d 574, certiorari denied 319 U.S. 772, 63 S.Ct. 1437, 87 L.Ed. 1720. But here, as always in such cases, the government's immunity deprives the court of jurisdiction of the action unless statutory authority for the suit can be shown. The Western Maid, 257 U.S. 419, 42 S.Ct. 159, 66 L.Ed. 299; The Wright, 2 Cir., 109 F.2d 699; Ham-

mond-Knowlton v. United States, 2 Cir., 121 F.2d 192, 203. Judge Caffey, in an interesting and careful opinion, came to the conclusion that because the Archer was a naval vessel owned by the United States she was a public vessel of this country, and that, consequently, the government is amenable to this suit, under the Public Vessels Act. The appellees support this conclusion by pointing out that before the vessel was delivered to Great Britain under the Lend-Lease Act the President had found that the defense of that country was vital to the defense of the United States, and so the use of the vessel as a unit of the Royal Navy in the defense of Great Britain should be considered a use in the defense of this country—obviously a public use. So it is argued that the Archer, being owned by this government and operated in the defense of this country, must be held to be a public vessel of the United States. That is, indeed, a plausible conclusion, but we think the Public Vessels Act contains limitations which prevent such a broad definition from being given to the term as it is used in the statute.

 When the collision occurred the Archer was, as a unit of the Royal Navy, a public vessel of Great Britain. The Exchange, 7 Cranch 116, 3 L.Ed. 287; The Western Maid, supra. That Congress intended to subject this government under the Public Vessels Act to suits for loss or damage caused by vessels of the Royal Navy ought to be clearly demonstrated before such a suit as this should be held within the jurisdiction of the court. There is nothing in the legislative history of the Public Vessels Act to indicate that Congress contemplated that a public vessel of another sovereign power would be considered a public vessel of the United States within the meaning of that phrase in the statute. And the language of the Act as found in § 4 makes it impossible for us to subscribe to such a conclusion. It is there provided that "No officer or member of the crew of any public vessel of the United States may be subpœnaed in connection with any suit authorized under this Act without the consent of the Secretary of the department or the head of any independent establishment of the Government having control of the vessel at the time the cause of action arose, or of the master or commanding officer of such vessel at the time of the issuance of such subpœna." This section must, of course,

be given effect in connection with the other parts of the same statute. It is clear, we think, that Congress did not intend to include within the class designated in the statute as a "public vessel of the United States" any vessel to which § 4 is not applicable. The section can apply only to a vessel in the "control" of some department or some independent establishment of the government "at the time the cause of action arose." True enough, the issuance of a subpoena could be had upon the consent of the master or commanding officer of the vessel at the time of the issuance of the subpoena as well as upon the consent of the secretary of the department or the head of an independent establishment "having control of the vessel at the time the cause of action arose"; but the condition that the vessel itself must be controlled as stated at the time the cause of action arose is left in full force. It seems perfectly clear that the master or commanding officer who can consent at the time of the issuance of the subpoena need not necessarily be the master or commanding officer at the time the cause of action arose, but the ship must, nevertheless, have been a vessel which at the time the cause of action arose was in the control of a department or of an independent establishment of the United States in order to be a public vessel of the United States within the statute. Otherwise her master or commanding officer at the time of the issuance of the subpoena would have no power to consent.

Manifestly the Archer was not controlled by any department or independent establishment of the United States at the time she collided with the Brazos. Notwithstanding her American documentation and the fact that the question of her ultimate disposition, and indeed of her actual ownership, was left at large by the Lend-Lease Act and by the receipt given at the time of her transfer, she was entirely outside the control of this government after she became a part of the Royal Navy. Physical delivery had been made to the British Admiralty, as was stated in the receipt. She was officered and manned, supplied and operated by the British Admiralty and was exclusively under its control to use it as it saw fit like any other ships of war in the Royal Navy.

The Archer not being a vessel controlled as the statute required at the time the alleged cause of action arose and therefore

not a public vessel of the United States within the Public Vessels Act no cause of action upon which the United States has consented to be sued has been alleged, and the District Court is without jurisdiction. United States v. Hudson, 7 Cranch 32, 33, 3 L.Ed. 259; United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058; Anniston Manufacturing Co. v. Davis, 5 Cir., 87 F.2d 773, 780, affirmed 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143.

Petition for writ of prohibition granted.