## PARMITER v. UNITED STATES.
### Civ. A. No. 6199.

District Court, D. Massachusetts.
Feb. 16, 1948.

Paul C. Hanna and Joseph H. Lewis, both of Framingham, Mass., for plaintiff.

William T. McCarthy, U. S. Atty., and Thomas P. O'Connor, Asst. U. S. Atty., both of Boston, Mass., for defendant.

WYZANSKI, District Judge.

This is an action to recover damages for personal injuries under the Federal Tort Claims Act, 60 Stat. 843, 28 U.S.C.A. § 921 et seq., as amended by Public No. 324, 80th Cong., 1st Sess., August 1, 1947.

#### Facts

1. On February 22, 1945, between 8 a. m. and 8:30 a. m. Charles Parmiter, Jr., a 33 year old Episcopalian clergyman, in perfect health, was proceeding by Pontiac automobile in a northerly direction along Edgell Road, Framingham, at a speed of about 15 m. p. h.

2. Russell E. Main, pfc., U. S. A., was driving an Army 2½ ton truck in a southerly direction along the same road. His truck was the last in a convoy of four trucks. Testimony as to the speed of the truck varies. Occupants of plaintiff's car claim that Main was going between 25 and 30 m. p. h. Main himself asserts he was traveling 10 to 15 m. p. h., but this I regard as an understatement in view of the distance he admits that he had covered since 7 a. m. and in view of Main's own

admission that he was forced to go into lower gear as he rounded the curve before the accident in order to reduce his speed.

3. The plowed out traveled section of the road in the vicinity of the accident was about 18 feet in width, sufficient for the passage of both vehicles involved in the accident abreast with several feet to spare. The road was bordered on either side by a crown of irregular ice graduating in depth from about two inches at the edge of the traveled section to four-five inches at the base of large snow banks.

4. A light rain was falling and freezing immediately causing a thin layer of ice to cover everything.

5. The vehicles first sighted each other at a distance of about 75 feet as Main's truck rounded a blind curve to his left.

6. As Main's truck rounded the curve, the left front bumper was four feet to the east of the center line of the road. When he first became aware of Parmiter's car approaching, he attempted to pull his truck over to the right, but was unable to do so because the effect of rounding the curve at the speed he was going had been to slew the rear of his truck to the right up against the ice crown and to throw the truck into a slight skid. The truck thus approached the point of collision at an angle slightly west of the center line of the road.

7. Parmiter, when he first sighted Main, was completely on his own side of the road. On sighting the Army truck and realizing the danger, he attempted to climb up on the ice crown along his side of the road. Although he was successful in getting his front wheels up onto the ice, the result was to throw his car into a heavy skid and to cause it to come down the road toward the truck at an angle of about 10 degrees with its rear about four feet to the west of the center line of the road. The left bumper of the truck came into contact with the car just forward of the front left door, the impact spinning the car around to a 45 degree angle and pushing it back about 10 feet.

8. After the colliding vehicles had come to rest, Main backed his truck clear and drove around to the right of the car to clear the road for other traffic. He was able to do this despite the fact that the car was now well over the center of the road by driving up onto the ice crown.

9. Parmiter was physically injured, rendered unconscious and removed to the hospital. There his injuries were diagnosed as including a fracture of wing of the ilium, multiple fractures of the pelvic bone; jamming of the head of the femera toward the mid-line of the pelvis; multiple contusions; concussion; and abrasions.

10. Parmiter remained in the hospital for two months, that is, until April 21. He regained consciousness on February 26. He was at first subjected to strong traction to pull his pelvis back toward normal. Later he was able to take bed exercises. Finally just before his discharge he walked on crutches. After leaving the hospital he walked for a time with a cane.

11. Now his pelvic region is not completely normal. His pelvis tips. One leg is slightly shorter than the other. He has a cloudiness in the sacroiliac region. He suffers occasional back pains. He is unable to perform all the visits to his parishioners which are customary in his profession. He cannot participate in vigorous athletics or in strenuous physical exercise.

12. His medical expenses, hospitalization, nurses' attendance, brace, crutches and ambulance have cost him $1,159. His car has been damaged to the extent of $475 of which he has been reimbursed to the extent of $425.

### Conclusions

■ 1. Under the Federal Tort Claims Act, the issues of negligence, causation and damage are issues to be determined in accordance with the law of the place where the act or omission giving rise to the claim occurred. 28 U.S.C.A. § 931. See State of Maryland to Use of Burkhardt v. United States, 4 Cir., 165 F.2d 869; 42 Ill.L.Rev. 344, 354; 56 Yale L.J. 534, 553; 35 Geo. L.J. 1, 20, 25.

■ 2. Under the law of Massachusetts I find that Main was negligent. This conclusion is based partly on his conduct in failing to remain on his own side of the road as he rounded the curve. Mass.G.L. (Ter.Ed.) c. 89, § 4; Lefeave v. Ascher, 292 Mass. 336, 198 N.E. 251; Kerr v. De-

veau, 311 Mass. 210, 40 N.E.2d 872. It is based also on the speed at which he was traveling in view of the condition of the bed of the road and in view of the visibility on February 22, 1945.

3. Parmiter was not contributorily negligent. He acted as a reasonable and prudent man in seeking to climb the crown of the road. An expert might have chosen another course of conduct, but Parmiter is not to be held to such an expert standard. Since Parmiter was not contributorily negligent, it is immaterial that the defence of contributory negligence was not seasonably tendered by specific allegation in its pleading as required by Mass.G.L.(Ter.Ed.) **c.** 231, § 85, and Federal Rules of Civil Procedure, Rule 8(c), 28 U.S.C.A. following section 723c.

4. Parmiter is entitled to recover on account of his physical injuries, pain, suffering, medical and like expenses, and property damage $11,634. No recovery is allowed on account of loss of earning power, because the evidence is not sufficiently clear as to the loss of earning power that he will sustain on account of the accident. Nor is the recovery to be diminished on account of any insurance Parmiter may have received. Gray v. Boston Elevated R. Co., 215 Mass. 143, 102 N.E. 71; The Potomac (Potomac v. Cannon), 105 U.S. 630, 26 L. Ed. 1194; Restatement, Torts, § 920, comment (e).

Judgment for plaintiff for $11,634 with costs.