**UNITED STATES of America,**
**Appellant,**

v.

**WEYERHAEUSER STEAMSHIP COM-**
**PANY, Appellee.**

**No. 17187.**

United States Court of Appeals
Ninth Circuit.

Aug. 30, 1961.

Rehearing Denied Oct. 24, 1961.

Wm. H. Orrick, Jr., Asst. Atty. Gen., John G. Laughlin and W. Harold Bigham, Attys., Dept. of Justice, Washington, D. C., and Laurence E. Dayton, U. S. Atty., San Francisco, Cal., for appellant.

Graham, James & Rolph, by Henry R. Rolph, San Francisco, Cal., for appellee.

Before CHAMBERS, BARNES and HAMLEY, Circuit Judges.

BARNES, Circuit Judge.

This case arises in admiralty upon a libel against the United States, and a cross-libel filed by the United States. The district court thus had jurisdiction under 28 U.S.C. §§ 1345 and 1346, and 46 U.S.C.A. § 782. A final decree was entered below, and this court has jurisdiction under 28 U.S.C. § 1291.

On September 8, 1955, appellee's vessel, the S.S. F. E. Weyerhaeuser, collided with appellant's vessel, the United States Army dredge Pacific, off the coast of Oregon. The trial court found that both parties were at fault and this finding is not challenged here. The accident caused significant damage to both vessels, and resulted in personal injury. Reynold Ostrom, an employee of the United States serving on the Pacific, recovered compensation from the United States in the amount of $329.01 under the Federal Employees' Compensation Act (5 U.S.C.A. § 751 et seq.). Ostrom also recovered

$16,000 from appellee by settlement. St. Paul Fire & Marine Insurance Company intervened claiming $19,122.75 as damages under its policy of marine insurance for its cargo general average contribution arising out of the collision, and Fireman's Fund Insurance Company likewise intervened, claiming $923.85 for its marine insurance cargo general average contribution. The court found (Finding II, Tr. 72) the intervenors had made such general average payments, and also found in favor of intervenor Boston Insurance Company in the sum of $443.54, on the same basis, or a total general average recovery of $20,490.14.

In accordance with its finding of mutual fault the trial court divided the damages between the parties as required by maritime law. It found that each party suffered damages as follows:

*Weyerhaeuser Steamship Company:*

| | |
|---|---|
| $27,652.13 | physical and detention damages of the S.S. F. E. Weyerhaeuser |
| 16,000.00 | paid to Ostrom in settlement of suit against it. |
| $43,652.13 | Total provable damages |

*United States of America:*

| | |
|---|---|
| $16,949.12 | physical and detention damages of the Pacific |
| 20,490.14 | payable to intervening libelants (insurance) |
| $37,439.26 | Total provable damages |

(Finding of Fact IV, R. p. 74.) Since appellee's provable damages exceeded appellant's damages by $6,212.87, the court awarded appellee judgment in the sum of $3,106.44, plus interest. Appellant, claiming that the court erred in including the $16,000 personal injury award in appellee's provable costs, has taken this appeal.

Appellant does not deny the antiquity or propriety of the maritime rule requiring the apportionment of damages in cases of mutual fault. Appellant also does not deny that in most instances the apportionment rule applies to damages occasioned by personal injuries. Appellant does contend, however, that the apportionment rule does not apply to damages arising from an injury to any employee covered by the Federal Employees' Compensation Act. Under 5 U.S.C.A. § 757 (b), the liability of the United States under the Act, with respect to the injury or death of an employee is "exclusive, and in place, of all other liability of the United States * * * to the employee * * * and anyone otherwise entitled to recover damages from the United States * * * on account of such injury or death * * *." This statute on its face, then, does seem to save the United States harmless from any liability from injury to its employees other than that specified by the statute. The government points out that statutes such as these are "give and take" arrangements. The employer loses his defenses to the employee's action and the employee gets a remedy which is fast and certain. The employer, on the other hand, enjoys a liability which is limited and determinative. To permit recoveries beyond that specifically allowed by the Act would be subversive of the statutory scheme. This is so, appellant contends, even with respect to recoveries by third parties—what cannot be accomplished directly should not be permitted by the indirect means of a third party recovery.

That the Federal Employees' Compensation Act provides the sole remedy for injured employees of the United States is well established. That was the only question before the Supreme Court in Patterson v. United States, 1959, 359 U.S. 495, 79 S.Ct. 936, 3 L.Ed.2d 971. And it affirmed Johansen v. United States, 1952, 343 U.S. 427, 441, 72 S.Ct. 849, 96 L.Ed. 1051, which states: The United States "has established by the Compensation Act a method of redress for its employees. There is no reason to have two systems of redress." 343 U.S. at page 439, 72 S.Ct. at page 856.[1]

---

1. And see: Lewis v. United States, 1951, 89 U.S.App.D.C. 21, 190 F.2d 22; Sasse v. United States, 7 Cir., 1953, 201 F.2d 871; Smithers & Company Inc. v. Coles,

In furtherance of this policy it has been held that a joint tortfeasor may not seek contribution or indemnity from the United States when the joint tortfeasor is sued by the administrator of a deceased United States employee (Christie v. Powder Power Tool Corp., D.C.D.C.1954, 124 F.Supp. 693). Appellee contends, however, that this case cannot control here, for it does not deal with the admiralty rule requiring apportionment of damages. Appellee points out that the trial court did not award it any sum as compensation for the injury suffered by Ostrom. Rather the award reflects the damage which appellee suffered as a result of the collision when it was required to compensate Ostrom for his injuries. In other words, appellee sought and received recovery in its own right for appellant's breach of duty to it under the maritime law; appellee claims that its right is not derivative from any right which Ostrom may have had.

The question presented here is a difficult one. Its resolution will abridge either the statutory policy or the maritime law. To allow a third party recovery

against the United States on any ground *is* subversive of the statute limiting the liability of the United States. On the other hand, the money paid to Ostrom *is* an element of the total damages suffered by appellee. And failure to apportion such damages is a breach of the maritime rule—for the rule requires the apportionment of all damages suffered, without regard to the fact that some of those damages stem from liabilities which could not be imposed against one of the parties but for the apportionment. The Chattahoochee, 1899, 173 U.S. 540, 19 S.Ct. 491, 43 L.Ed. 801. There appear to be no cases which can be described as controlling, but there are some precedents which may be helpful.

With the first portion of our last statement appellee would not agree. It refers us to United States (The U.S.S. Ruchamkin) v. The S.S. Washington (Texas Co. v. United States), D.C.E.D.Va.1959, 172 F.Supp. 905, affirmed without opinion, 4 Cir., 1959, 272 F.2d 711 (no petition for writ of certiorari filed).

■ It is true that Judge Bryan in the Washington-Ruchamkin case, supra, did

1957, 100 U.S.App.D.C. 68, 242 F.2d 220, certiorari denied 354 U.S. 914, 77 S.Ct. 1299, 1 L.Ed.2d 1129; Underwood v. United States, 10 Cir., 1953, 207 F.2d 862.

Earlier this year, when this court considered the exclusiveness of an injured person's remedy under the Federal Employees' Compensation Act (5 U.S.C.A. § 751 et seq.) vis-a-vis the Federal Tort Claim Act (28 U.S.C. § 1346(b)), this court said:

"The language of §§ 751(a) and 757(b) of the Federal Employees' Compensation Act * * * is plain and unambiguous. Under the statute the employee, regardless of any negligence, is to receive in case of injury certain definite amounts, which recovery 'shall be exclusive, and in place, of all other liability of the United States.' His recovery is not dependent upon the injury being caused by the negligence of any employees of the United States nor is it reduced or taken from him if the injury is the result of his own negligence. That the remedy provided by the Federal Employees' Compensation Act is to be exclusive is shown by the legislative history of Congress at the time that the statute

was amended in 1949. The House Committee Report contains the following:

" 'It is the committee's purpose to have the language of such Section 7 entirely clear in this respect so as to express the intention that the compensation remedy shall henceforth be the exclusive remedy of a person protected by this act against the United States, or against its instrumentalities in cases in which a suable instrumentality is the employer.'

"Similarly, the Senate Report states:

" 'The purpose of the latter is to make it clear that the right to compensation benefits under the act is exclusive and in place of any and all other legal liability of the United States or its instrumentalities of the kind which can be enforced by original proceeding whether administrative or judicial, in a civil action or in admiralty or by any proceeding under any other workmen's compensation law or under any Federal tort liability statute.'

"It thus appears that neither the plain language of the statute, its legislative history, nor the prior construction of similar statutes permits a recovery by appellant."

Posegate v. United States, 9 Cir., 1961, 288 F.2d 11, at page 14.

grant Texas Company, the private shipowner, judgment against the United States (for one-half of the awards made against the Texas Company in favor of the heirs of four soldiers killed aboard the government vessel in the collision)— and also ordered such judgment without deduction for the veterans benefits already paid by the government to the soldiers' heirs. We point out two things. First: the Washington-Ruchamkin case was, unlike this present action, brought under the Death on the High Seas Act, 46 U.S.C.A. § 761. This action was brought under 46 U.S.C.A. §§ 781–790, the Public Vessels Act. Yet both Acts must be construed together in laying down the pattern and marking the restrictions under which the United States may be sued. Mejia v. United States, 5 Cir., 1945, 152 F.2d 686, certiorari denied 328 U.S. 862, 66 S.Ct. 1366, 90 L.Ed. 1632; United States v. Caffey, 2 Cir., 1944, 141 F.2d 69. Secondly: (and of greater importance) Judge Bryan listed four issues before him, after the fourth circuit had held "The Texas Company also at fault." The first three do not concern us here; the fourth assumes as *admitted* the very legal question here in issue.[2] We do not know why this admission was made by the government in the Washington case. But no such admission was made in the instant case. And, of course, the government is not estopped from taking a position here contrary to that it has invariably or occasionally taken previously. Utah Power & Light v. United States, 1917, 243 U.S. 389, 409, 37 S.Ct. 387, 61 L.Ed. 791; United States v. City and County of San Francisco, 1941, 310 U.S. 16, 32, 60 S.Ct. 749, 84 L.Ed. 1050.

Appellee concludes its references to the Washington case in its brief with the following appeal to the court's conscience:

"The fact is that the United States with knowledge of the admiralty mutual fault collision rule enacted a scheme of compensation for its employees injured in the performance of duty without reference to negligence. Insofar as Weyerhaeuser is concerned the employee's compensation has nothing to do with this collision and should have no bearing on Weyerhaeuser's right to have all the damages resulting from the collision mutually apportioned between the two vessels. Any other result would be grossly unfair."

Whether fair or unfair, the Supreme Court has established the rule that the United States cannot be burdened *directly* with tort liability for injuries sustained by its employees. We do not presume that if there had never been a retreat by the United States from its absolute nonliability as a sovereign, appellee could or would here maintain that such claim of sovereignty was inferior to the right established by admiralty law, no matter how ancient, simply because unfair to the shipowner. Any claim of sovereign immunity is to some extent always unfair to the one who has sustained loss or damage.

But can a limited waiver of sovereign immunity be enlarged by indirection, i. e., through the negligent act of a third party—the shipowner? We think not.

■ There has been no question for one hundred years as to the general maritime rule that a total loss in collision cases is divided where both vessels are at fault. The Catharine v. Dickinson, 1954, 17 How. 171, 58 U.S. 171, 177, 15 L.Ed. 233; Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 1952, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318. And appellee cites to us as examples where damages *have been allowed* against the government two cases: Ocean S.S. Co. of Savannah v. United States (The City of Rome), 2 Cir., 1930, 38 F.2d 782, 786;

2. The opinion raises as the fourth question before the court:
   "(d) whether against *the admitted* right of The Texas Company to reimbursement from the Government for one-half of the death awards as collision damages, the United States may offset the sums paid and payable by the Government to the decedents' dependents as statutory death gratuities, indemnity and compensation." (Emphasis added.) 172 F.Supp. 905, at page 907.

Chicago-Silverpalm, 9 Cir., 1937, 94 F.2d 771.

The City of Rome concerned itself only with an attempt to exempt or limit liability by Ocean Steamship Company (as the owner of The City of Rome) from the claims of Goldye M. Dobson, as Administratrix, against it; and its claim for damages against the United States for property damages. Judge Learned Hand specifically avoided any "question of marshalling the proceeds of the Rome as between the United States and the private claimants."

Further, this case was decided in 1930. Title 5 U.S.C.A. § 757(b) (the exclusive liability subsection) was created by the Act of October 14, 1949, Secs. 201, 303 (g). It was given but a limited retroactive effect. (See U.S.Code, 1952 Ed., Title 1–14, p. 371, 5 U.S.C.A. § 757 note.)

Chicago-Silverpalm, supra, is cited to us as 94 F.2d 771. The Silver Palm appears in 9 Cir., 94 F.2d 754, and holds the United States at mutual fault with the private shipowner for a collision. It does not touch upon the matter here involved. The Silver Palm (Silver Line v. United States), 9 Cir., 1937, 94 F.2d 776, has solely to do with limitation of liability on the Silver Palm's part. In The Silver Palm (Silver Line v. United States), 9 Cir., 1937, 94 F.2d 781, the appeal was from an order permitting the administrators of three deceased naval officers to proceed with their wrongful death suits. The appeal was dismissed as moot. Neither The Silver Palm cases, nor The Rome case, establish the principle claimed by appellee that "similar damages have been uniformly allowed in previous cases against the government." (Appellee's Brief, p. 10.) Nor do alleged voluntary settlements by the government establish a right specifically excluded and prohibited by an Act of Congress, as is argued in appellant's brief. However, there is authority to support the appellee's position. In The Tampico case, D.C.W.D.N.Y.1942, 45 F.Supp. 174, 175, a stevedore was injured while transferring cargo from a barge to The Tampico. The stevedore, who was employed by The Tampico's owner, sued the barge owner claiming that the barge was defective. The barge owner impleaded the owner of The Tampico, claiming that it was negligent in operating a "clamshell bucket" used in transferring cargo. The Tampico's owner was immune from personal injury suits by its employees, for it was covered by the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. The "exclusiveness of liability" under this Act, 33 U.S.C.A. § 905, is similar in extent to 5 U.S.C.A. § 757(b). Nevertheless, the trial court held that the barge owner could obtain contribution from the owner of The Tampico. The Tampico's owner was immune from suits brought by the stevedore or anyone in his right, but "the right in admiralty to contribution between wrongdoers does not stand on subrogation but arises directly from the tort." We must note, of course, that this is a district court case, not binding on this court, and of limited precedential value.

The Tampico was cited and quoted with approval by a higher court in Hitaffer v. Argonne Co., 1950, 87 U.S.App.D.C. 57, 183 F.2d 811, 23 A.L.R.2d 1366, certiorari denied 340 U.S. 852, 71 S.Ct. 80, 95 L.Ed. 624. In that case appellant's husband was injured during the course of his employment; his employer, as in The Tampico, was covered by the Longshoremen's and Harbor Workers' Compensation Act. The wife claimed that the injury to her husband had interfered with her marital relationship and she sued for loss of consortium. The court held that the action for loss of consortium does not stand on subrogation but arises directly from the tort. Thus the wife was not suing in her husband's right; she was suing in her own right and was entitled to damages for her loss. Accordingly, the court held that the wife's right to damages for loss of consortium was not barred by the Compensation Act. This case, however, was expressly overruled in 1957 in Smithers & Company Inc. v. Coles, 100 U.S.App.D.C. 68, 242 F.2d 220, certiorari denied 354 U.S. 914, 77

S.Ct. 1299, 1 L.Ed.2d 1129, a case heard by the District of Columbia Circuit en banc. The court noted that the right to damages for loss of consortium must be regarded as a right "flowing from" the spouse's injury:

> "Whether the right of a spouse be regarded as independent, i. e., arising directly from the tort, or as derivative, that right does not come into existence except for the occurrence of the injury. Absent a compensable injury to the one spouse there would be no claim to assert against the employer." 242 F.2d at pages 224–225.

Expressing its disagreement with Hitaffer, the court in Smithers & Company Inc. v. Coles held that all liability "flowing from" the employee's injury is governed by the Act:

> "In the Hitaffer opinion this court conceded that 'the plain and literal language' of this statute *could* be construed to bar 'any right of action flowing from the compensable injury,' but rejected that interpretation. We think the statute cannot be read any other way without doing extreme violence to those 'plain and literal' words read in the light of the purposes of the Act." 242 F.2d at page 224.

The same result had already been reached by the tenth circuit with respect to the Federal Employees' Compensation Act, the statute which is in issue here (Underwood v. United States, 10 Cir., 1953, 207 F.2d 862).[3] The Underwood case received the approbation of this court in Thol v. United States, 9 Cir., 1954, 218 F.2d 12, 14. The Smithers & Company

Inc. v. Coles and Underwood cases are, we think, persuasive authority here.[4] In our opinion the shipowner's right of action is just as dependent upon the employee's injury as the wife's claim for loss of consortium; or to put it more precisely, the shipowner's claim is no more independent of the employee's injury than is the wife's. If, then, the policy of the statute bars the wife's action for loss of consortium, it should also bar the shipowner's action for contribution.

The authority supporting appellee's position is not so persuasive as the cases last cited above. While The Tampico supports appellee's cause, it was, in the eyes of one court overruled by American Mut. Liability Ins. Co. v. Matthews, 2 Cir., 1950, 182 F.2d 322. See Coates v. Potomac Elec. Power Co., D.C.D.C.1951, 95 F.Supp. 779. For this reason, appellee did not cite The Tampico. We cannot agree that the Matthews case overrules The Tampico. Matthews held only that the Longshoremen's and Harbor Workers' Compensation Act prevents the joint tortfeasor from obtaining contribution from the employer covered by the Act. This parallels the holding, under the Federal Employees' Compensation Act, in Christie v. Powder Power Tool Corp., supra. It does not deal with the problem presented by the admiralty rule and the point raised by The Tampico, viz. that the suit based upon the admiralty rule is an independent cause of action not founded upon the injured employee's right but founded upon the employer's breach of a duty *to other shipowners* to exercise care in navigation. This point *is* involved, however, in the persuasive authority discussed above relating to a

---

3. We agree with the reasoning of the tenth circuit. There the court said:
  "It is significant, we think, that the Congress chose to speak in terms of liability of the government, not in terms of remedies or rights of action, and in doing so, it gave a right of action only to the extent that it saw fit to relax governmental immunity from any liability." Underwood v. United States, 10 Cir., 1953, 207 F.2d 862, 864.

4. As the District of Columbia Circuit pointed out in Smithers:
  "[E]very court which had undertaken to construe the same or similar exclusionary clauses prior to the Hitaffer case had arrived at a result in conflict with the decision of this court in Hitaffer. [cases noted] Cases decided subsequent to the Hitaffer case also followed the literal language of statutes cast in substantially the same terms." 242 F.2d 220, at page 225.

spouse's right to sue for loss of consortium. Thus, while it does not appear that The Tampico has been overruled, it has been robbed of its persuasiveness by subsequent developments.

Appellee places its principal reliance upon a series of cases interpreting the Harter Act, the most emphasis being placed on The Chattahoochee, supra. There a steamer and a schooner collided, both vessels being at fault. The owners of the schooner were awarded damages as bailees of the cargo, but the steamer was allowed to recoup half of the value of the cargo—even though the schooner was not liable to the cargo owners (under Section 3 of the Harter Act, 46 U.S.C.A. § 192). The shipowner's statutory exemption from liability did not preclude a recovery against it under the maritime rule. Thus, appellee claims, the statutory limitation upon the employer's liability to his employee should not destroy his liability under the maritime rule.

We concede that The Chattahoochee is strong authority in favor of appellee's position. There is, of course, the obvious distinction in the fact that The Chattahoochee interprets the Harter Act while we are here called upon to interpret the Federal Employees' Compensation Act. But a mere comparison of statutory phraseology will not aid in resolving the problem. The Harter Act provides categorically that the shipowner shall not be liable for losses due to faults of navigation. While this command may not be so specific as that contained in the Compensation Acts, it is as clear and strong. But the language of the Harter Act must be considered in light of the judicial gloss which has been placed upon it. In American Mut. Liability Ins. Co. v. Matthews, supra, we learn (182 F.2d at page 324) that "The Harter Act was not intended to affect the liability of one vessel to the other in a collision case * * *." Can the same be said with respect to the Compensation Acts? We have already seen that such Acts cut off the spouse's right

to damages for loss of consortium. And there is no sound reason why a distinction should be made between such cases and the case of a shipowner seeking contribution under the admiralty rule. The Acts, in establishing the duty of the employer and in making that duty exclusive, have abolished the independent rights of third parties against the employer for the damage which the employer causes them when he wrongfully injures his employee. Thus it must be candidly admitted that while the United States once had a duty *to other shipowners* to navigate carefully in order not to injure its own employees, that duty has been abrogated by the Compensation Act. We hold The Chattahoochee is not here controlling because it deals with a different statute which has encrusted upon it a significantly different judicial history.

■ The policy of an Act which precludes a wife's recovery for loss of consortium also precludes a shipowner's claim for contribution from a joint tortfeasor. The judgment below is *reversed* with directions to recompute damages without any allowance for the $16,000 paid by appellee to the injured United States employee, Ostrom.

■■ The government raised a second issue regarding the trial court's interpretation of the rules of the sea in connection with the use of radar. Since both parties admitted the propriety of the trial court's finding of mutual fault, this issue does not bear upon the correctness of the judgment. Appellant briefed the issue only very sketchily and appellee has not briefed the issue at all. In the absence of an actual controversy with adequate briefing by both sides, this court should not be called upon to render a decision on the issue. It appears that the appellant is requesting an advisory opinion, and, of course, federal courts generally refrain from rendering such opinions. Muskrat v. United States, 1911, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246. We so refrain here.

Reversed with instructions.