**CHILEAN LINE INC., Libellant,**

v.

**MAIN SHIP REPAIR CORP. and United States of America, Respondents.**

United States District Court
S. D. New York.
Aug. 17, 1964.

Kirlin, Campbell & Keating, New York City, for libellant.

Robert M. Morgenthau, U. S. Atty., New York City, Louis E. Greco, Attorney in Charge Admiralty & Shipping Section, Department of Justice, New York City, of counsel, for United States of America.

CASHIN, District Judge.

On May 13, 1964, Chilean Line Inc. filed a libel in this court against Main Ship Repair Corp. and the United States to recover damages of approximately $40,000 for services furnished to the USS KANKAKEE and the USS FORT SNELLING at the request of Main Ship Repair Corp. The work was performed at the Columbia Street Pier in Brooklyn, New York.

The libel specified that libellant was a Delaware corporation with an office and place of business within this district. Respondent, Main Ship Repair Corp., was said to be a New York corporation without an office in this district. Libellant asked that process be issued for a decree against respondents and that in the event respondent Main Ship Repair Corp. cannot be found within this district, that the amounts due Main Ship Repair Corp. by the United States be attached by process of foreign attachment to satisfy the decree. The Clerk of this Court refused to issue process with the clause of foreign attachment since he knew of no precedent for such an attachment of government funds. Libellant now asks this court for an order directing the clerk to issue process with the writ of foreign attachment. The United States moves for a dismissal of the suit as against it, maintaining that the venue provisions of the Suits in Admiralty Act, 46 U.S.C. § 741 et seq., and the Public Vessels Act, 46 U.S. C. § 781 et seq., under which the attachment is brought, have not been met.

The Public Vessels Act, 46 U.S.C. § 782, states that suit shall be brought in any district where the vessel may be found within the United States or, if the vessel is out of the United States, in the district where one of the parties suing resides or has an office for the transaction of business. As supported by affidavit, both vessels were within the United States (the USS KANKAKEE in Rhode Island and the USS FORT SNELLING in Virginia) when suit was instituted, making the Southern District of New York an improper forum. Simonowycz v. United States, 125 F.Supp. 847 (N.D. Ohio, E.D.1954).

■ The venue is *prima facie* correct with respect to the Suits in Admiralty Act. Title 46 U.S.C. § 742 permits venue to be placed in any district in which the party suing resides or has his *principal* place of business or where the vessel may be found. If the place of business within this district is a *principal* place, or if at some time during the pendency of the litigation the vessels in question come back within this district, the venue would be proper. Gill v. United States, 184 F.2d 49, 51 (2 Cir. 1950), Warren v. United States, 179 F.2d 919, 920 (2 Cir. 1950). Therefore, the Government's motion must be denied.

The Clerk would undoubtedly have issued process as a matter of course had a private party been named in place of the federal government. Rule 2 of the Supreme Court Admiralty Rules authorizes attachments in suits *in personam* "if * * * respondent shall not be found within this district." Judge Zavatt in an unreported opinion, D/S A/S Flint v. Sabre Shipping Corp., E.D.N.Y.1964, 228 F.Supp. 384, cast some doubt on the propriety of "crossing the East River" to a district where respondent cannot be found in order to utilize foreign attachment. Despite his criticism of the procedure, Judge Zavatt did not assert that it was unlawful. Ultimately, he dismissed the attachments on the basis that the respondent could be found within the district. In the present case there has been no suggestion that the East River was crossed for inappropriate reasons. If a foreign attachment were issued it would still be subject to the defense that Main Ship Repair Corp. is present in this district. United States v. Cia Naviera Continental S.A., 178 F.Supp. 561 (S.D.N.Y. 1959), Federazione Italiana D.C.A. v. Mandask Compania D.V., 158 F.Supp. 107 (S.D.N.Y.1957).

■■ Without a waiver of sovereign immunity the United States is not subject to suit or to the attachment of its funds, Buchanan v. Alexander, 4 How. 20, 11 L.Ed. 857 (1846), and such consent is to be strictly construed. United States v. Sherwood, 312 U.S. 584, 591, 61 S.Ct. 767,

85 L.Ed. 1058 (1940). It has, by the Public Vessels Act and the Suits in Admiralty Act, consented to be sued in admiralty.

■■ Determining whether a particular suit is properly brought under the Suits in Admiralty Act or the Public Vessels Act is at best a difficult question since these statutes are complementary and to be construed together to expand the relief given to private persons. United States v. Caffey, 141 F.2d 69, 70 (2 Cir. 1944). Choosing one rather than the other becomes even harder in the light of the 1960 amendments to the Suits in Admiralty Act making that statute applicable to all vessels of the United States and not merely merchant vessels. See, 2 U.S.Code Congressional and Administrative News Letter, p. 3583 (1960). However, the court does not face that problem since it concludes that the waiver of immunity contained in those statutes does not extend to a foreign attachment of property of the United States.

As an original matter, the court might be disposed to rule that the broad language of consent to suit in these and similar federal statutes includes the right to attach federal property just as if the government were a private litigant. But, in other cases where similar proceedings have been attempted on the basis of a statutory waiver of immunity the Supreme Court has either denied the remedy or carefully restricted it. In F. H. A. v. Burr, 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940), that court, interpreting a broad "sue and be sued" waiver of immunity for a federal agency, permitted the garnishment of moneys due an employee by the F. H. A. The court noted, at page 250, 60 S.Ct. at page 492, that under its decision only funds of the corporation could be garnisheed and not funds from the general treasury of the United States. The statutory waiver extended so far and no further. In addition, the creditor in that action was a *judgment creditor* and not one who still had to establish the validity of his own claim. In United States v. Sherwood, supra, the court emphasized the con-

servatism due in construing a general waiver of sovereign immunity and denied that consent had been given by the Tucker Act, 28 U.S.C. § 41(20), for a judgment creditor to sue the United States on a sum allegedly due the judgment debtor. A waiver to attach the specific funds of a federal agency is one thing; a waiver to attach the general funds of the United States is another.

If garnishment or attachment were freely allowed against the United States, the government might soon be involved in all the litigation of those with whom it does business, and would have to be concerned not only with its own rights but also with those of its contracting parties against third persons.

The order directing issuance of process with a clause of foreign attachment is denied.

It is so ordered.