**NEWPORT AIR PARK, INC., Plaintiff, Appellee,**

v.

**UNITED STATES of America, Defendant, Appellant.**

**No. 7317.**

United States Court of Appeals First Circuit.

Dec. 4, 1969.

Alan S. Rosenthal, Atty., Dept. of Justice, with whom William D. Ruckelshaus, Asst. Atty. Gen., Edward P. Gallogly, U. S. Atty., and Daniel Joseph, Atty., Dept. of Justice, were on brief, for appellant.

Marsha E. Swiss, Washington, D. C., with whom Bruce G. Sundlun and Amram, Hahn & Sundlun, Washington, D. C., were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

Due to the negligence of appellant United States and appellee Newport Air Park, Inc., two airplanes collided at the Warwick, Rhode Island airport. Appellee settled the ensuing injury claims, and appellant, pursuant to a local statute requiring contribution,[1] reimbursed appellee to the extent of one-half of its outlay. This it did because the waiver contained in the Federal Tort Claims Act, FTCA, extends to claims for contribution when the government is a joint tortfeasor. United States v. Yellow Cab Co., 1951, 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523.[2] The government made one exception, which has resulted in the present lawsuit. One of the persons killed by the collision was a government employee. The government's obligation to its employees is under the Federal Employees' Compensation Act, FECA, 5 U.S.C. § 8101 et seq., a statute antedating the FTCA, and similar in content to state workmen's compensation acts.[3] Section 16(c) of the FECA pro-

[1]. Rhode Island adopted an early version of the Uniform Contribution Among Joint Tortfeasors Act. R.I.Gen.Laws 10-6-1 et seq.

[2]. While the word "tort" is in the title, the act itself waives the government's immunity to "claims * * * for * * * personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government * * *." 28 U.S.C. § 1346(b). In holding that the waiver was to be broadly construed and applied to contribution, the Court did not address itself to the question whether a claim for contribution by a joint tortfeasor is, strictly, a tort claim. Nor did it otherwise touch on the issues in the case at bar.

[3]. The exclusivity provision with which we are presently concerned was not added until made necessary by the Federal Tort Claims Act. See S.Rep. No. 836, 81st

vides that this is its sole obligation.[4] The government discharged this liability by paying the widow $8,600. Thereafter the widow sued appellee, and recovered $50,000 by way of settlement. As required by section 32 of the FECA,[5] the widow then repaid the $8,600 to the government. Appellee demanded contribution by the government to the extent of $8,600.[6] Citing section 16(c), the government refused. The parties having stipulated to the above facts, the court granted judgment for the appellee, 293 F.Supp. 809, and the government appeals.

Basically it is appellee's position that the limitation contained in section 16(c) has the purpose of restricting recovery by the employee and his representatives, and is not directed at rights of unrelated third parties. The issue is not that simple. The inquiry must be, what right is appellee seeking to enforce.

It is clear that if appellee's claim to reimbursement were a strictly independent right, personal to appellee, sec-tion 16(c) would not bar such recovery. Weyerhaeuser S.S. Co. v. United States, 1963, 372 U.S. 597, 83 S.Ct. 926, 10 L.Ed. 2d 1. There a private shipowner, whose vessel collided with a government vessel, brought suit in admiralty. A cross libel was filed. Finding both to blame, the court divided the damages. The government, asserting that section 16(c) was a bar to its further liability, objected to the court's including in the gross damages the amount that Weyerhaeuser was required to pay a government employee injured in the collision. The Court rejected this contention, saying, at p. 601, 83 S.Ct. at p. 929,

"The purpose of § 7(b), added [to the FECA] in 1949, was to establish that, as between the Government on the one hand and its employees and their representatives or dependents on the other, the statutory remedy was to be exclusive. There is no evidence whatever that Congress was concerned with the rights of unrelated third parties, much less of any purpose to

---

Cong., 1st Sess., quoted by the Court in Weyerhaeuser S.S. Co. v. United States, *infra,* at 601, n. 5, 83 S.Ct. at 929.

4. "The liability of the United States or an instrumentality thereof under this subchapter or any extension thereof with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States or the instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States or the instrumentality because of the injury or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute. However, this subsection does not apply to a master or a member of a crew of a vessel." 5 U.S.C. § 8116(c).

5. "Adjustment after recovery from a third person. If an injury or death for which compensation is payable under this subchapter is caused under circumstances creating a legal liability in a person other than the United States to pay damages, and a beneficiary entitled to compensa-tion from the United States for that injury or death receives money or other property in satisfaction of that liability as a result of suit or settlement by him or in his behalf, the beneficiary, after deducting therefrom the costs of suit and a reasonable attorney's fee, shall refund to the United States the amount of compensation paid by the United States and credit any surplus on future payments of compensation payable to him for the same injury. The amount refunded to the United States shall be credited to the Employees' Compensation Fund. If compensation has not been paid to the beneficiary, he shall credit the money or property on compensation payable to him by the United States for the same injury. However, the beneficiary is entitled to retain at least one-fifth of the net amount of the money or other property remaining after the expenses of a suit or settlement have been deducted, plus an amount equivalent to a reasonable attorney's fee proportionate to the refund to the United States." 5 U.S.C. § 8132.

6. Actually, the complaint as filed sought the entire $50,000. However, appellee did not appeal from the court's award of $8,-600, and informs us that this is the proper figure.

disturb settled doctrines of admiralty law affecting the mutual rights and liabilities of private shipowners in collision cases."

Appellee cannot take all the comfort from *Weyerhaeuser* that it might wish. While the result there was to include in the damages to be divided between the parties what Weyerhaeuser had to pay the government employee, Weyerhaeuser had a direct right of action against the government because of the collision with its vessel. The Court held that section 16(c) of the FECA did not bar the inclusion of Weyerhaeuser's tort liability to the government employee as part of its consequential damages. The resultant division of damages was not contribution, but was in accordance with the admiralty rule of reduced recovery when there is contributory negligence.

The decision below is not supported by *Weyerhaeuser*, and is inconsistent therewith. The court awarded Weyerhaeuser one-half of what it was required to pay to the government employee, a sum substantially greater than the compensation payment under the FECA. *See* 9 Cir., 294 F.2d 179. If the *Weyerhaeuser* principle applied to the case at bar, appellee should recover $25,000, not $8,600. Neither the court below, nor the cases upon which it relied, nor even appellee (*see* n. 6, *supra*) makes that contention.

While on the subject of consistency, we might add that the court's award of $8,600 is inconsistent with the basic concept of contribution, which is sharing, not payment in full. On appellee's theory, that the government's liability of $8,600 was occasioned by joint negligence, it would seem that the obligation should be divided between them. Instead, the government has been made to pay as much as if the negligence had been solely its own. The court's rea-

soning, 293 F.Supp. at 815, seemingly that the government should pay one-half of the $50,000, but that "limitless contribution would probably compel a complete reconsideration of the actuarial basis of compensation insurance," while supported by a dictum in Elston v. Industrial Lift Truck Co., Inc., 1966, 420 Pa. 97, 216 A.2d 318, and in accord with the Pennsylvania rule as there summarized, seems impermissible ad hoc legislation.[7] Either the government owes $4,300, or, conceivably, $25,000, or it owes nothing.

Although appellee mistakes the effect of *Weyerhaeuser*, the government places too much reliance upon Pope & Talbot, Inc. v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143. There the combined negligence of a stevedore and a shipowner resulted in injury to an employee of the stevedore. In the Longshoremen's and Harbor Workers' Compensation Act there are exclusivity and recoupment provisions comparable to the pertinent section of the FECA. The stevedore paid compensation under the Longshoremen's Act to the injured worker, who then sued the shipowner. The latter demanded that its accountability for damages to the worker be reduced by the amount of the stevedore's payment, and that the stevedore, because of its negligence, be forbidden to recoup from the employee—in effect what is being sought here. Otherwise, it argued, the stevedore would be profiting from its own lack of care. The Court refused, holding that the statutory scheme for workmen's compensation would be violated by such a result.[8]

The government fails to note the absence in *Pope & Talbot* of any statute providing for contribution. The ship owner sought to create rights merely from the fact that it was making a pay-

---

7. The statement that such limited liability does not interfere with the statutory scheme we cannot accept. It interferes less than would unlimited liability, but, of necessity, it interferes *pro tanto*.

8. The "specific provisions to permit an employer to recoup his compensation pay-

ments out of any recovery from a third person negligently causing such injuries * * * [are] to protect employers who are subjected to absolute liability by the Act." 346 U.S. at 412, 74 S.Ct. at 206, supra.

ment which benefited the negligent stevedore. This was a circular argument. If the shipowner had prevailed, in whole or in part, the stevedore would, in effect, have been indemnifying the shipowner for its own negligence, contrary to Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 1952, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318. The circumstances that the shipowner's payment ultimately benefited the stevedore was *res inter alios*. The latter's payment to its employee had nothing to do with negligence, but was contractual indemnity.

An injured party's insurance does not redound to lessen the liability of the third party who caused the injury. Had the stevedore in *Pope & Talbot* been an ordinary insurer that had contracted with the employee, the shipowner would have received no benefit from, or credit on account of, the compensation payment. Bangor & A. R. Co. v. Jones, 1 Cir., 1929, 36 F.2d 886; Parmiter v. United States, D.Mass., 1948, 75 F.Supp. 823; Note, Unreason in the Law of Damages: The Collateral Source Rule, 77 Harv.L. Rev. 741 (1964); Rest. Torts § 920, Comment e. Correspondingly, the fact that the employee here had agreed with the government to make a refund in certain circumstances was none of the shipowner's concern.[9]

We must, accordingly, determine whether the right of contribution as between joint tortfeasors calls for a different result. We think not. We reach this result not by application of rubric— whether the government was a joint tortfeasor or not—because stating the question in such manner tends to assume the point, but by considering the nature of the right of contribution. Contribution does not create direct liability in tort, each towards the other, between two tortfeasors. Rather, as the word implies, it is a right based upon equitable fairness. The right to have the other tortfeasor contribute to his outlay arises in whichever tortfeasor satisfies the loss. It is inequitable that as between two parties jointly liable the ultimate loss should be fortuitously determined by the injured party's choice of defendant. Gregory, Contribution Among Joint Tortfeasors: A Defense, 54 Harv.L.Rev. 1170 (1941); Leflar, Contribution and Indemnity Between Tortfeasors, 81 U.Pa. L.Rev. 131, 137 (1932); Note, Toward a Workable Rule of Contribution in the Federal Courts, 65 Colum.L.Rev. 123, 125 n. 19 (1965).

As a matter of legal principle the route to contribution must be via subrogation or assignment based upon payment.[10] In such circumstances we would suppose that there would be nothing to be subrogated to if the other party claimed to be a joint tortfeasor, was never under liability to the injured party. Nor do we readily see any unfairness, so far as the non-liable party is concerned, for he, by hypothesis, receives no benefit from the satisfaction of the other actor's liability. Some courts, nevertheless, have found unfairness unless the immune party contributes, without, however, explaining where the unfairness lies. *See, e. g.,* Zarrella v. Miller, 1966, 100 R.I. 545, 217 A.2d 673.

With all due respect, compelling contribution here could be said to be a windfall. But if such decisions are sound they cannot affect the case at bar. In *Zarrella* the party required to contribute was a husband whose negligence, along with the negligence of the party seeking contribution, had injured his wife. Under state law the husband was immune from suit by the wife. The court held, nonetheless, that he was liable to contribute. Even if Rhode Island would ex-

---

9. Indeed, thinking of the government as wearing two hats, in its capacity as insurer it is reasonable rather than unreasonable to provide that it recovers from a negligent third party.

10. Because this is an assignment by operation of law, 31 U.S.C. § 203 forbidding the assignment of claims against the government does not stand in the way. Penn Tanker Co. v. United States, 5 Cir., 1969, 409 F.2d 514.

tend this principle to override the workmen's compensation statute,[11] we would not be bound. The immunity being state-created, the state, through its courts, may properly determine its extent. In the case of the FECA the immunity is federally created; its extent must be determined by the federal courts, particularly when the issue is one of government liability.

Looking at the question as one of federal law, we hold that contribution cannot be had from the government when the government was under *no tort liability* to the injured party. Even when the person obliged to pay was only secondarily liable, and hence entitled to full indemnity, it has been held that no right arises against the primary actor if, as the employer, he was statutorily immune from tort liability. United Air Lines, Inc. v. Wiener, 9 Cir., 1964, 335 F.2d 379; Bertone v. Turco Products, Inc., 3 Cir., 1958, 252 F.2d 726; Slattery v. Marra Bros., Inc., 2 Cir., 1951, 186 F.2d 134, 139. These are a fortiori cases, as a duty might be thought to arise between one primarily liable directly to the one only secondarily liable. *But cf.* Slattery v. Marra Bros., Inc., *supra,* where the court pointed out, in denying recovery, that the only legal relationship was that of joint tortfeasors, each to the injured party. We need not go as far as those courts to hold that contribution is barred in the present case.

The judgment of the District Court is vacated. Judgment for the defendant.

COFFIN, Circuit Judge (concurring).

I concur in the court's conclusion and share what seems to be its ultimate rationale. The purpose of this separate statement is to underscore that rationale, which, in my view, is more strongly supported by the relevant cases than the court's opinion reflects.

There are two elements in the Federal Employees' Compensation Act which together support denial of contribution to appellee: the immunity from suit by the injured party conferred on the government by section 8116(c); and the provisions establishing and protecting the Employees' Compensation Fund as a source for payment of the obligations stemming from the government's absolute liability for benefits.

The significance of the first element springs from the basic justification of contribution. As Prosser succinctly states it,

"There is obvious lack of sense and justice in a rule which permits the entire burden of a loss, for which two defendants were equally, unintentionally responsible, to be shouldered onto one alone, according to the accident of a successful levy of execution, the existence of liability insurance, the plaintiff's whim or spite, or his collusion with the other wrongdoer, while the latter goes scot free." Prosser, Torts (Hornbook Series, 3d ed. 1964), p. 275.

In the case where one of the tortfeasors is immune from suit by the injured party—our case—the rationale behind contribution no longer exists, for there is no possibility of the arbitrary, fortuitous, or collusive choice of defendants which underlies contribution. That the government may go "scot free" may be somewhat unfair, but the unfairness stems not from the law of contribution but from the fact that the government is given immunity under section 8116(c) in exchange for strict liability for specified benefits for all injuries of its covered employees.

11. A distinction has been drawn. *Compare* Smith v. Southern Farm Bureau Cas. Ins. Co., 1965, 247 La. 695, 174 So.2d 122 with Yale & Towne Mfg. Co. v. J. Ray McDermott Co., 5 Cir., 1965, 347 F.2d 371; McLaughlin v. Braswell, 1968, 251 La. 1076, 208 So.2d 535; Sanderson v. Binnings Constr. Co., La.App., 1965, 172 So.2d 721. If abstract fairness is the test, in the workmen's compensation cases the employer, at least overall, does incur contractual liability, which is to be offset by immunity in the individual case. *Cf.* Pope & Talbot, Inc. v. Hawn, *supra.*

Weyerhaeuser S. S. Co. v. United States, 372 U.S. 597, 83 S.Ct. 926, 10 L.Ed.2d 1 (1963), helps appellee not at all. The Court observed, at 601, 83 S.Ct. at 929 that "[t]here is no evidence whatever that Congress was concerned with the rights of unrelated third parties" in passing section 8116(c). This observation has no bearing here because, as noted above, immunity from contribution arises from tort immunity *not* by legislative intent but because the underlying justification for contribution no longer exists when one tortfeasor is immune from suit by the injured party. Even were appellee to have had a direct cause of action in tort against the government, it could not rely on *Weyerhaeuser* to recover for its payments to the injured government employee. *Weyerhaeuser* was, as the whole opinion and sequence from grant of certiorari to holding indicate, strictly the product of a unique admiralty doctrine in which payments to victims are included in defining damages to be shared.* The Court there found no intent to disrupt the age-old doctrine of divided damages in admiralty cases; I find no intent to alter the traditional rule that tort immunity yields contribution immunity. *See* Prosser, *supra* at 277; 19 A.L.R.2d 1003; 26 A.L.R.3d 1283.

The second element in this case is the linkage of a compensation scheme based on absolute liability with a fund which is protected in part by a recoupment provision when employees are injured by others, section 8132. Its significance for our case, it seems to me, was settled by Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 411–412, 74 S.Ct. 202, 98 L.Ed. 143 (1953), in which the Court held, as to a similar scheme, that preventing the employer from recouping benefits paid would frustrate the purpose of the statute. Surely that same frustration occurs here if appellee can defeat recoupment. That there was no right of contribution in *Pope & Talbot* did not weigh heavily on the Court's mind and does not seem to me to detract at all from the authority of the case as applied to our situation. I concede that it might not be conclusive if appellee's right were of a more compelling nature. *Compare* Wallenius Bremen G.m.b.H. v. United States, 409 F. 2d 994 (4th Cir. 1969) with United Air Lines, Inc. v. Wiener, 335 F.2d 379 (9th Cir. 1964), cert. denied, 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964).

The presence of this statutory fund and scheme is also an adequate basis for distinguishing Zarrella v. Miller, 100 R.I. 545, 217 A.2d 673 (1966), which gives the court so much concern. The Rhode Island court was willing to subject a husband, who could not be sued by his wife, to liability for contribution to a joint tortfeasor. It thus applied contribution where the traditional justification—the possibility of a captious choice of defendant—was lacking; but, as the court there points out, with the marital relationship removed from the case by a change in party plaintiff, there was no reason for recognizing the interspousal immunity. This reasoning does not apply to allow contribution from an employer subject to a workmen's compensation system. A change of party plaintiff from injured victim to liable tortfeasor would not remove the fact that the legislative purpose would be frustrated if third parties could defeat the recoupment provision. Pope & Talbot, Inc. v. Hawn, *supra*.

---

* For this reason I see no useful purpose in speculating what appellee's recovery would have been if appellee had a direct cause of action. It would have recovered its damages—but without inclusion of any amount paid to the employee. Moreover, the court's reference to $4,300 seems to imply that in contribution each party is obligated to pay half of what it would have had to pay had it been the lone tortfeasor. That logic would mean that the injured party in this case only gets $29,300 instead of the $50,000, i. e., $25,000 from Newport (half what it would have paid) and $4,300 from the government (half what it would have paid).