Douglas McKAY, Secretary of the Interior, and Douglas G. Wright, Administrator of the Southwestern Power Administration, Appellants,

v.

CENTRAL ELECTRIC POWER COOPERATIVE, a corporation, Linn, Missouri, Appellee.

No. 12307.

United States Court of Appeals District of Columbia Circuit.

Argued Feb. 8, 1955.

Decided April 7, 1955.

Mr. Melvin Richter, Atty., Department of Justice, of the bar of the Supreme Court of Massachusetts, *pro hac vice*, by special leave of Court, with whom Messrs. Leo A. Rover, U. S. Atty., Paul A. Sweeney and Theodore H. Haas, Attys., Department of Justice, were on the brief, for appellants.

Mr. Gregory C. Stockard, Jefferson, Mo., of the bar of the Supreme Court of Missouri, *pro hac vice*, by special leave of Court, with whom Mr. Lawrence Potamkin, Washington, D. C., was on the brief, for appellee.

Before EDGERTON, BAZELON and BASTIAN, Circuit Judges.

BAZELON, Circuit Judge.

In 1950, the appellee, Central Electric Power Cooperative (a rural electrification cooperative),[1] entered into two contracts with the Government acting through the Southwestern Power Administration.[2] The first contract provided that Central construct an electric transmission system and lease it for forty years to S.P.A. which would maintain and operate it. The second provided that S.P.A. buy the entire output of a steam electric-generating plant (to be constructed by Central) and sell electric energy to Central for forty years for the use of its members. Both contracts contained the following provisions:

"(a) This agreement is and all rights and obligations hereunder, and the expenditure of funds by the Government under any provisions hereof, are expressly conditioned and contingent on the Congress making the necessary appropriations to enable the Government to carry out the provisions of the agreement, and in case the Congress fails to make such appropriations, the Cooperative hereby releases the Government from all liability due to the inability of the Government to perform this agreement on that account.

"(b) No obligation contained herein for the future payment of money by the Government, or liability on the part of the Government for breach of any of the provisions contained herein, shall be binding upon or enforceable against the Government unless and until the Congress first appropriates funds out of which such obligations or liability can be legally paid."

The transmission system, completed prior to June 30, 1953, was delivered to S.P.A., and Central commenced purchasing electric power from S.P.A.

The Interior Department appropriation for the fiscal year beginning July 1, 1953,[3] provided:

1. The members of the Cooperative are five rural electric cooperatives, each of which is incorporated under Missouri's Rural Electric Cooperative Act and engaged in the rural distribution of electricity, and the Sho-Me Power Corporation, chartered on February 14, 1947, as a corporation under the General Business and Corporation Law of Missouri, Mo.R.S.1949, c. 351, V.A.M.S.

2. The Southwestern Power Administration is an agency within the Department of the Interior, set up by the Secretary of the Interior to carry out certain functions and duties assigned to the Secretary by Executive Order No. 9366 of July 30, 1943, 3 C.F.R. 35, 1943 Supp., as supplemented by Executive Order No. 9373 of August 30, 1943, 3 C.F.R. 39, 1943

Supp., U.S.Code Cong.Serv.1943, pp. 5.66, 5.72. Subsequent to the enactment of Section 5 of the Flood Control Act of 1944, 58 Stat. 890, 16 U.S.C.A. § 825s, the Secretary of the Interior designated the Administrator of the Southwestern Power Administration as the marketing agent for the surplus electric power and energy generated at reservoir projects constructed by the Department of the Army in the "southwestern power area." Administrative Order 2135, Nov. 21, 1945, 10 F.R. 14527. As defined in this order, the southwestern power area includes all of Arkansas and Louisiana, and parts of Kansas, Missouri, Oklahoma and Texas.

3. Public Law No. 172, Act July 31, 1953, 83d Cong., 67 Stat. 261, 262.

"Continuing Fund, Southwestern Power Administration

"Not to exceed $1,200,000 shall be available during the current fiscal year from the continuing fund for all costs in connection with the purchase of electric power and energy, and rentals for the use of transmission facilities."

The Statement of the House Managers contained the following:

"None of the funds allowed are to be used for the purpose of implementing existing contracts with REA cooperatives which provide for the lease-purchase of transmission or generating facilities. The funds may be used only for the purchase of electric power and energy and the payment of wheeling service charges at rates and in amounts comparable to those paid in the Southwestern Power Administration area under existing contracts based only on use value received with no additional allowance for purchase or lease of facilities. Such arrangements may be made with REA Cooperatives in the area but no funds for this purpose are to be available after February 28, 1954." [4]

Appellants viewed this Statement as a bar to allocating funds from the appropriation for the performance of the aforementioned contracts. Accordingly, they declared the contracts suspended by their own terms. Central brought this suit.

The amended complaint prayed for (1) judicial review of agency action; (2) a declaration that appellants' actions are illegal and lacking in due process; (3) a determination of the rights, status and legal relations of the parties; and (4) a judgment directing that appellants not refuse to perform the contracts on the ground that Congress failed to appropriate funds. Appellants moved to dismiss on the ground, among others, that this was an unconsented suit against the Government, or, in the alternative, for summary judgment. The District Court denied this motion and granted Central's motion for summary judgment. The order decreed that the congressional appropriation was available to carry out the contracts; that appellants acted illegally and beyond the scope of their authority in refusing to carry out the contracts on "the alleged grounds that no appropriation of funds had been made by Congress"; and that "to the extent that funds are available" from the Interior Department Appropriation Act appellants "are authorized to carry out the provisions of said contracts with [Central]." This appeal followed.

We think the suit must be dismissed. It may be, as the District Court held, that appellants are not precluded by the Statement of the House Managers from using funds from the Interior Department Appropriation Act for the purpose of carrying out the contracts in question. But appellants' action in refusing to so use the funds "certainly * * * is not a violation of any express command of Congress." [5] The Act is permissive only. It does not impose upon appellants a clear affirmative duty to use the funds for that specific purpose. At least so much is essential to avert the doctrine of sovereign immunity as a bar to effective relief in the nature of mandamus or specific performance.[6] The District Court apparently recognized that such relief was barred since it undertook only to determine the rights of the parties under the contracts. But such a determination is purposeful only in relation to an action in the Court

4. This Statement accompanied the Conference Report on H.R. 4828, 83d Cong., which was subsequently enacted into Public Law 172. H.R.Rep. No. 947, 83d Cong., 1st Sess. 5 (1953).

5. Mine Safety Appliances Co. v. Forrestal, 1945, 326 U.S. 371, 374, 66 S.Ct. 219, 221, 90 L.Ed. 140.

6. For discussion of authorities, see Clackamas County v. McKay, 1954, 94 U.S. App.D.C. 108, 219 F.2d 479; and West Coast Exploration v. McKay, 93 U.S. App.D.C. 307, 337, 213 F.2d 582, 610–612, certiorari denied, 1954, 347 U.S. 989, 74 S.Ct. 850, 98 L.Ed. 1123. Cf. Arizona v. Hobby, 94 U.S.App.D.C. 170, 221 F.2d 498.

of Claims for breach of contract.[7] Clearly then, this determination should await that remedy.[8]

Reversed and remanded for dismissal.

EDGERTON, Circuit Judge, concurs in the result.

---

7. Cf. Larson v. Domestic & Foreign Corp., 1949, 337 U.S. 682, 704, 69 S.Ct. 1457, 93 L.Ed. 1628.

8. Cf. Almour v. Pace, 1951, 90 U.S.App. D.C. 63, 66–67, 193 F.2d 699, 702.