Emil BUSEY, et ux., Bernice Busey,
Plaintiffs,

v.

William WASHINGTON, Standard Salvage Co., Inc., Defendants and
Third-Party Plaintiffs,

v.

UNITED STATES of America, and Walter J. Brown, Third-Party Defendants.

Civ. A. No. 3017-60.

United States District Court
District of Columbia,
Civil Division.

Jan. 15, 1964.

Bruce R. Harrison and James H. Myrick, Washington, D. C., for plaintiffs.

Thomas S. Jackson and Francis L. Young, Jr., Washington, D. C., for defendants and third-party plaintiffs.

Sylvia A. Bacon, Asst. U. S. Atty., with whom David C. Acheson, U. S. Atty., Charles T. Duncan and Joseph M. Hannon, Asst. U.S. Attys., for the third-party defendants, entered their appearance.

PINE, District Judge.

This action is before me for decision on a third-party claim against the United States for contribution and on motion by defendants for judgment n. o. v. or for a new trial. The pertinent facts are set forth below.

Emil Busey and his wife, Bernice Busey, plaintiffs, instituted an action for damages growing out of injuries sustained by Mr. Busey. His claim is for damages on account of personal injuries, and her claim is for damages on account of loss of her husband's services and consortium.

Busey, a mail carrier, was a passenger with other carriers in a United States mail truck. They were being transported to the locations where they were to commence the delivery of their mail. Their mail bags were in the truck with them. Busey intended to leave the truck at its next stop. Before reaching the location the occurrence giving rise to this litigation took place.

In front of the postal truck, just prior to the occurrence, was a loaded salvage truck. It was being driven by an employee of the owner of the salvage truck, acting in the scope of his employment.

The driver of the postal truck attempted to pass the salvage truck on its left hand side, both proceeding in the same direction, and in so doing the accident occurred. Plaintiffs sued the driver of the salvage truck, defendant Washington, and the owner of the salvage truck, defendant Salvage Co., and did not sue the driver of the postal truck. But defendants have made the driver of the postal truck, Walter J. Brown, and the United States third-party defendants seeking

contribution if the verdict and judgment should be in favor of plaintiffs.

The jury found in favor of plaintiffs against defendants, and in favor of Brown, the driver of the postal truck, on the third-party complaint against him. Generally stated, the legal effect of the verdict is that the jury found that the driver of the salvage truck was negligent, that the plaintiff was not contributorily negligent, and that the driver of the postal truck was not concurrently negligent.

The third-party complaint against the United States is brought under the Federal Tort Claims Act [1] and decision on the third-party complaint against the United States is one for the court and not the jury.[2]

Defendants made timely motions for a directed verdict against plaintiffs on the principal ground that the male plaintiff was guilty of contributory negligence as a matter of law in that he allegedly violated Sec. 111 of the Traffic and Motor Vehicle Regulations of the District of Columbia, reading, so far as material, as follows:

> "No person shall ride on any vehicle upon any portion thereof not designed or intended for the use of passengers, and no driver of a vehicle shall permit the same. This provision shall not apply to * * * persons riding within truck bodies in space intended for materials."

It is undisputed that plaintiff Emil Busey was riding in a part of the truck not designed for the use of passengers. Instead, he was sitting on the floor of the front portion of the body of the truck with his legs and feet extending into the well of the cab of the truck opposite the driver, waiting to alight at the next stop. There were benches in the body of the truck running lengthwise with the truck and affixed on hinges so they could be lifted to the sides of the truck when not in use, and these were the places designed for passengers. The mail carriers' mail bags were in the truck with them. At the time of the accident, the driver of the truck, third-party defendant Brown, came to an abrupt stop projecting the male plaintiff Busey forward against the dashboard or windshield, thereby causing an injury to his head and body with serious residuals, according to some of the testimony of a multitude of physicians who testified in the case. The evidence is in conflict as to the cause of the abrupt stop. There was testimony that Brown in the operation of the postal truck attempted to pass the salvage truck on its left hand side and that in so doing a piece of angle iron either fell from the salvage truck or was projecting from the salvage truck without any cloth or any other warning device thereon, and came in contact with the postal truck making a loud noise which caused Brown to come to the abrupt stop. The windshield and a portion of the metal front of the postal truck were damaged. There was also testimony that while the postal truck was attempting to pass the salvage truck the former struck the rear or side of the latter, which striking caused the driver of the postal truck to come to an abrupt stop. There is no dispute, however, as to where Busey was seated; and he violated the regulation by being seated where he was unless he comes within the exception contained in the regulation.

■ On a motion for directed verdict, or for judgment n. o. v., I am required to construe the evidence most favorably to plaintiffs and give them the benefit of every reasonable inference arising therefrom, and then, before the motion can be granted, must conclude that all reasonable men must reach the same conclusion, namely, in this case, that plaintiff Busey was contributorily negligent, and that such negligence was a proximate cause of the injuries sustained.[3]

1. 62 Stat. 933, 28 U.S.C. § 1346(b); 62 Stat. 983, 28 U.S.C. § 2674.
2. 62 Stat. 971, 28 U.S.C. § 2402.

3. Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720 (1930); Jackson v. Capital Transit Co., 69 App.D.C. 147, 99

On the evidence so construed and giving plaintiffs the benefit of every reasonable inference, and after a view of a truck stipulated to be identical with the mail truck involved, except for the omission of the lengthwise benches, I come to the conclusion that reasonable men might differ as to whether plaintiff Busey came within the exception to the regulation and also as to whether or not, if he was seated in violation of the regulation, that was a proximate cause of the collision. On this latter point there was evidence that those who were seated on the benches were thrown forward and sustained injuries. This was enough, in my opinion, under the above stated criterion, to require submission to the jury for determination of the additional question of proximate cause, namely, whether the place where plaintiff Busey was seated was the proximate cause of his injury or whether it might reasonably have occurred if he had been seated on one of the benches.

The motion for judgment n. o. v. will therefore be denied.

Now, on the third party claim against the United States, I am required to make a factual determination on these points myself, unrestricted by the criterion for determination of a motion for a directed verdict. In other words, I have the duty to weigh and evaluate the evidence and determine as a fact-finder whether the driver of the postal truck, Brown, as an agent of the United States, was concurrently negligent, bearing in mind that the burden of proof is on the third-party plaintiff to establish this fact by a preponderance of the evidence. On this basis I find that the driver of the postal truck, Brown, who was exonerated of blame by the jury in the third party complaint against him, was guilty of concurrent negligence in permitting Busey to ride on that part of the truck where he was riding in violation of the regula-

tion referred to; that Busey did not come within the exception to the regulation, that this negligence concurred with the negligence of defendants in proximately causing the accident. Stated bluntly, I disagree factually with the jury's verdict in finding in favor of Brown, the driver of the postal truck.

Therefore the United States should be held liable for contribution unless there is a legal impediment, which I shall now discuss.

In 1954 I had the same question before me in the case of Christie v. Powder Power Tool Corporation, D.C., 124 F.Supp. 693. There, as here, plaintiff was a civilian employee of the United States, and there, as here, had received benefits under the Federal Employees' Compensation Act, 39 Stat. 742, 5 U.S.C. § 751 et seq., hereinafter referred to as the "Compensation Act." That act contains a provision, hereinafter referred to as the "exclusive liability provision" reading so far as pertinent as follows:

"(b) The liability of the United States * * * with respect to the injury or death of an employee shall be exclusive, and in place, of all other liability of the United States * * to the employee, his legal representative, spouse, dependents, next of kin, *and anyone otherwise entitled to receive damages* from the United States * * * on account of such injury or death, in any direct judicial proceedings in a civil action or in admiralty, or by proceedings, whether administrative or judicial, under any other workmen's compensation law or *under any Federal tort liability statute* * * *."* (Italics supplied) 63 Stat. 861, 5 U.S.C. § 757(b)

I held, pursuant to this exclusive liability provision, that the third-party claim against the United States could not be

F.2d 380 (1938); Shewmaker v. Capital Transit Co., 79 U.S.App.D.C. 102, 143 F. 2d 142 (1944); Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147 (1940).

sustained and rendered summary judgment in its favor.

In 1961, in United States v. Weyerhaeuser S. S. Co., 294 F.2d 179, the United States Court of Appeals for the Ninth Circuit came to a similar conclusion although that case arose in admiralty and involved a collision caused through mutual fault between two vessels, one privately owned and the other a United States vessel. There, an employee of the United States received compensation, as here, under the Compensation Act, and the Court held that the private shipowner was not entitled to recover from the United States any amount paid by it on account of damages to the injured Federal employee who was covered by the Compensation Act.

In 1962, in Drake v. Treadwell Construction Company, 299 F.2d 789, the United States Court of Appeals for the Third Circuit came to the same conclusion where a federal employee sued a contractor for injuries, and the contractor brought the United States into the suit by filing a third-party claim for contribution. This case presented the very issues involved herein, and the Court of Appeals held that the exclusive liability provision of the Compensation Act, withdrew whatever consent to the suit the Federal Tort Claims Act gave regarding a claim by a contractor for contribution from the United States as a joint tortfeasor whose negligence was also responsible for the injury to the government employee who recovered a judgment against the contractor. The judgment of the District Court for contribution was therefore reversed, and the case remanded for dismissal of the third-party complaint.

However, in April of 1963 the Supreme Court reversed the Weyerhaeuser case, supra, in 372 U.S. 597, 83 S.Ct. 926, 10 L.Ed.2d 1, and held that the exclusive liability provision of the Compensation Act, above quoted, did not limit the admiralty rule of divided damages in mutual fault collisions. Three weeks later the Supreme Court vacated the judgment of the Court of Appeals for the Third Circuit in the Treadwell case, supra, and remanded it to the District Court for further consideration in the light of the Weyerhaeuser case, supra.[4]

The opinion of the Supreme Court in the Weyerhaeuser case, supra, states that certiorari was granted "to consider the single question whether the historic admiralty rule of divided damages in mutual fault collisions has been qualified, as the Court of Appeals held, by the exclusive liability provision of the federal compensation statute." There is no reference in the opinion to contribution between joint tortfeasors, and the question whether the Weyerhaeuser decision, supra, should or should not be limited to the admiralty rule of divided damages is left open for determination.

When this trial commenced the United States renewed a motion for summary judgment on the ground that the exclusive liability provision was a bar to the suit. This motion had been previously denied without prejudice by another judge of this court. At that time my attention was drawn to the opinion of the Supreme Court in the Weyerhaeuser case, supra, and on the basis of that opinion I felt impelled to deny the renewed motion and required the entire case, including the third party claim, to go to trial. At its conclusion, the United States again raised the same point in urging a decision in its favor on the third party claim. The United States Attorney contends that the Weyerhaeuser case, supra, is distinguishable from the case at bar and not controlling, and that the suit cannot be maintained against the United States by reason of the exclusive liability provision in the Compensation Act. After reflection, research, further arguments and the submission of briefs, I have come to the conclusion for the reasons hereinafter set forth that the decision of the Supreme Court in the Weyerhaeuser case, supra, is not con-

4. Treadwell Construction Co. v. United States, 372 U.S. 772, 83 S.Ct. 1102, 10 L.Ed.2d 136.

trolling herein and adhere to the decision reached by me in 1954 in the Christie case, supra.

The Federal Tort Claims Act was enacted in 1948 and provided that the United States "shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances * * *." 62 Stat. 983, 28 U.S.C. § 2674.

The Supreme Court in United States v. Yellow Cab Co., 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523, has held that the Federal Tort Claims Act empowers the United States District Court to require the United States to be impleaded as a third party defendant and to answer the claim of a joint tortfeasor for contribution as if the United States were a private individual. But in the Yellow Cab case, supra, and in its companion case of Capital Transit Co. v. United States, 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523, the plaintiff was a non-employee of the United States. Here, the male plaintiff Busey was an employee of the United States and has received compensation under the Compensation Act originally enacted in 1916, but amended in 1949, to include the exclusive liability provision herein referred to. The Yellow Cab case, supra, therefore, provides no authority against the position of the United States in this case.

So far as the Weyerhaeuser case, supra, is concerned, the Supreme Court has held only that this exclusive liability provision does not limit the admiralty rule of divided damages in mutual fault collision cases. The Court pointed out that the case involved "a rule of admiralty law which, for more than 100 years, has governed with at least equal clarity the correlative rights and duties of two shipowners whose vessels have been involved in a collision in which both were at fault." It further called attention to the fact that the Court long ago had "held that the full scope of the divided damages rule must prevail over a statutory provision which, like the one involved in the present case, limited the liability of one of the shipowners with respect to an element of damages incurred by the other in a mutual fault collision." The Court made clear that its decision in the Weyerhaeuser case, supra, was limited to admiralty cases involving mutual fault collisions, relying in part at least on the antiquity of the admiralty rule of divided damages.

In this connection it is significant that three weeks after its decision in Weyerhaeuser, supra, the Supreme Court in the Treadwell case, supra, which was not in admiralty, but identical in its legal aspects with the case at bar, did not reverse the Court of Appeals with direction to reinstate the judgment theretofore entered by the District Court, but vacated the judgment of the Court of Appeals and remanded the case to the District Court for further consideration in light of the Weyerhaeuser case, supra.

Moreover, I cannot equate the law of contribution, of comparative recent origin in this jurisdiction, George's Radio v. Capital Transit Co., 75 U.S.App.D.C. 187, 126 F.2d 219, with the ancient rule of divided damages in admiralty. While there may be a similarity between the two doctrines, there is a vast difference in their concept and application. There are numerous examples of this difference. In admiralty, the law requiring contribution is part of the original tort, but as between joint tortfeasors it is not.[5] Under Rule 14, Federal Rules of Civil Procedure, a party may not be impleaded simply because he may be liable to the injured plaintiff, but only if he is or may be liable to the impleading defendant for all or part of the plaintiff's claim against him. Under Admiralty Rule 56, 28 U.S. C.A. 119, a party may be impleaded upon either ground.[6] Under Admiralty Rule 56, supra, the libelant is entitled to re-

---

5. Drummond v. United States, 78 F.Supp. 730, at 731 (E.D.Va.1948).

6. Moore's Federal Practice, 2d ed. Vol. 3, §§ 14.15–16, 14.20.

cover against an impleaded respondent for damages caused by the latter's negligence, and the case is treated as if the libel had originally been filed against such impleaded respondent.[7] Also in the event the libelant in admiralty cannot collect from respondent, the amount due may be assessed against the respondent impleaded.[8] Under Rule 14, Federal Rules of Civil Procedure, a third party action adjudicates the rights of the original defendant and the third party defendant, *inter sese*, but does not permit a judgment directly for plaintiff against a third party defendant.[9] So much for the difference in concept and application between the Admiralty Rule of divided damages and the law of contribution.

In the Weyerhaeuser case, supra, the Supreme Court stated that the legislative history of the Compensation Act shows that the concern of Congress was to provide federal employees a swift, economical and assured right of compensation for injuries arising out of the employment relationship, regardless of the negligence of the employee or his fellow servants or the lack of fault on the part of the United States.

But Congress has also evinced a concern for eliminating needless and expensive litigation. For example, the Senate Report,[10] explained the purpose of adding the exclusive liability amendment, as follows:

"Thus, an important gap in the present law would be filled and at the same time needless and expensive litigation will be replaced with measured justice. The savings to the United States, both in damages recovered and in the expense of handling the lawsuits, should be very substantial and the employees will benefit accordingly under the Compensation Act as liberalized by this bill."

To permit third party plaintiffs, as here, to recover contribution from the United States for one-half of the amount defendants are answerable in damages for injuries to plaintiffs would appear to be contrary to the Congressional purpose to save the United States from any additional burden on the public treasury. It should be noted that Congress added the exclusive liability provision to the Act amending the Compensation Act more than a year after Congress enacted the Federal Tort Claims Act containing extensive coverage.

To point up the financial effect of permitting contribution in cases of this character, the record herein is worthy of consideration. To date the United States has paid $15,000 to the male plaintiff as compensation under the Compensation Act. The verdict and judgment in his favor is for $37,000. The amount payable by the United States as compensation in the future is problematical depending upon the future health and life of plaintiff. At the present time, if the United States were required to pay contribution of one-half of the judgment of $37,000 or $18,500, awarded to the male plaintiff, it would recover $15,000 by refundment from him of the compensation already paid,[11] but would pay $3,500 in excess of its present liability under the Compensation Act.[12] While this payment would go to the Salvage Co.,

---

**7.** Mangone v. Moore-McCormack Lines, D. C., 152 F.Supp. 848, at 852 (1957) citing as authority The G. L. 40, 2 Cir., 66 F.2d 764; Staples v. Manhattan Lighterage Corp., 68 F.Supp. 754 (E.D.N.Y.) affirmed 2 Cir., 158 F.2d 284.

**8.** Benedict on Admiralty § 416 (6th ed. 1940); The Atlas, 93 U.S. 302, 23 L.Ed. 863; The North Star, 106 U.S. 17, 1 S. Ct. 41, 27 L.Ed. 91.

**9.** National Mutual Ins. Co. of District of Columbia v. Liberty Mutual Ins. Co., 90 U.S.App.D.C. 362, 196 F.2d 597 (1962).

**10.** S.Rep.No.836, 81st Cong., 1st Sess. 23; U.S.Code Cong.Service 1949, p. 2125.

**11.** 39 Stat. 747, 5 U.S.C. § 777.

**12.** Of course, if the male plaintiff lives and continues in his present condition of health, this amount will ultimately be recaptured by the United States as a

directly by way of contribution, by indirection it would inure to the benefit of the plaintiff and would be in excess of compensation at present allowable under the Compensation Act. In addition, the female plaintiff has been awarded a verdict and judgment in the amount of $40,-000 for loss of consortium,[13] and the United States would be required to pay, if contribution were allowed, one-half of that amount, or $20,000 to the Salvage Co., which amount by indirection, would inure to her benefit from the United States. This could never be recaptured by the United States.

Further, as stated by the Supreme Court in Bradford Elec. Co. v. Clapper, 286 U.S. 145, 52 S.Ct. 571, 76 L.Ed. 1026, the purpose of Workmen's Compensation Statutes such as the one herein involved, is not only to provide for employees "a remedy which is both expeditious and independent of proof of fault, *but also for employers a liability which is limited and determinate.*" (Italics supplied) To permit contribution against the United States would not be in keeping with this purpose, inasmuch as the liability of the employer, the United States in this case, would cease to be limited and determinate.

Also it should be borne in mind that the Federal Tort Claims Act provides that the United States "shall be liable * * * in the same manner and to the same extent as a private individual under like circumstances." It appears that in a vast majority of the States which allow contribution between joint tortfeasors, recovery against an employer is prohibited under the compensation laws.[14] In this District, the majority rule has been followed.[15] Under such rule, if the United States is "liable * * * to the same extent as a private individual under like circumstances," as an employer, it would not be liable for contribution herein.

In this jurisdiction a spouse may not recover for loss of consortium where workmen's compensation has been paid [16] under the Longshoremen's and Harbor Workers' Act, hereinafter referred to as the Harbor Workers Act,[17] made applicable to the District of Columbia. But in this case, if contribution is allowed, she would recover for loss of consortium, although the exclusive liability provision in that Act is nearly identical with that contained in the Compensation Act.[18]

In Ryan Stevedoring Co. v. Pan-Atlantic Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, referred to and discussed in the Weyerhaeuser case, supra, the Supreme Court held that the exclusive liability provision in the Harbor Workers' Act did not bar recovery by a third party from an employer which had paid compensation, but the basis for its decision in the Ryan case, supra, was the existence of a contractual relationship between the third party and the employer and not a joint tort. And in the Smither case, supra, the United States Court of Appeals for this circuit, in holding that the wife of an injured employee is barred by the exclusive liability provision of the Harbor Workers' Act from maintaining an action against his employer for loss of consortium, pointed out that reliance on the Ryan case, supra, was misplaced, inasmuch as recovery was allowed there on the basis of a contract of indemnity and not on tort.

credit on his future compensation payment.

13. The fact that the female plaintiff was blind and in greater need of her husband's services than noramlly is to be expected may be an explanation for this verdict.

14. 53 A.L.R.2d 979; Larsen, The Law of Workmen's Compensation, § 76.21.

15. Liberty Mut. Ins. Co. v. Vallendingham, 94 F.Supp. 17 (D.C.D.C.1950).

16. Smither & Co. v. Coles, 100 U.S.App. D.C. 68, 242 F.2d 220 (1957).

17. 44 Stat. 1426, 33 U.S.C. § 905; 45 Stat. 600, D.C.Code, § 36–501.

18. United States v. Weyerhaeuser S.S. Co., 372 U.S. 597, at 602, 83 S.Ct. 926, at 929, 10 L.Ed.2d 1.

■ For the foregoing reasons and under the well settled law that the United States is immune from suit save as it consents to be sued, and the consent must be strictly construed,[19] I have reached the conclusion that the Weyerhaeuser case, supra, is not controlling in the case at bar in that it should be limited to Admiralty cases of the character involved therein, and that the exclusive liability provision of the Compensation Act constitutes a legal bar to the recovery of contribution from the United States by the third-party plaintiff herein. The United States is therefore entitled to judgment in its favor on the third party claim against it.

■ In their motion for a new trial, included in their motion for judgment n. o. v., defendants claim that the court erred in failing to require the United States to be made a party plaintiff as the real party in interest. In this connection the Compensation Act provides that:

"If an injury * * * for which compensation is payable * * * is caused under circumstances creating a legal liability upon some person other than the United States to pay damages therefor, the commission may require the beneficiary to assign to the United States any right of action he may have to enforce such liability of such other person or any right which he may have to share in any money or other property received in satisfaction of such liability of such other person, or the commission may require said beneficiary to prosecute said action in his own name." 39 Stat. 747, 5 U.S.C. § 776.

In this case there was no assignment, and the evidence did not disclose that there was any refusal on the part of the male plaintiff to make an assignment. Under these circumstances, absent an assignment, I find no error in failing to require the United States to be made a party and in support of this view rely on the case of Louisville & Nashville Railroad Company v. Rochelle, 252 F.2d 730, C.C.A. (Sixth Circuit) and authorities collected therein.

■ Defendants also contend in their motion that the submission to the jury of the additional element of proximate cause, in relation to their claim of contributory negligence, was erroneous, in that a violation of the traffic regulation involved herein, if found by the jury, "was both negligence *per se*, and the proximate cause of the injury." In support of this contention, defendants argue that the injury suffered by the male plaintiff is the very injury the regulation was designed to prevent, because its sole purpose is "to prevent injury to passengers in the event of a *sudden stop* of the vehicle." (Italics supplied. Quotations from defendant's Supplemental Memorandum) Defendants cite principally Janof v. Newsom, 60 App.D.C. 291, 53 F.2d 149, and Ross v. Hartman, 78 U.S. App.D.C. 217, 139 F.2d 14, as a basis for this contention. I am of the opinion, in the first place, that the regulation in question had other purposes than to prevent injury in the event of a "sudden stop," e. g., to prevent injury in the event of severe jolting over a rough highway, or while proceeding speedily around a curve, or while riding on the outside of the vehicle. But aside from this, the United States Court of Appeals recently has spoken on the subject in Richardson v. Gregory, 108 U.S.App.D.C. 263, 281 F.2d 626 (1960), wherein the court said:

"Thus a correct instruction on violation of a traffic regulation embraces the idea that violation of a regulation which was made for the protection of one in plaintiff's position is in and of itself negligence in the sense that it is conclusive evidence of failure to exercise due care on the part of the defendant. But it must be made equally clear to a jury that this negligence does not produce legal liability unless the jury finds that such negligence is the proximate cause of the injury."

19. United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941).

I have given consideration to the other points relied on by defendants in their motion for a new trial and do not find that they constitute a legal basis for a new trial. Counsel will submit on notice an order denying the motion for judgment n. o. v. or for a new trial, and a judgment finding in favor of the United States on the third party claim against it.