

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-21-2005

# In Re: McAllister Towing

Precedential or Non-Precedential: Precedential

Docket No. 04-3938

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"In Re: McAllister Towing " (2005). *2005 Decisions*. Paper 12.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/12

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 04-3938 and 04-4109

———————

IN RE:  PETITION OF MCALLISTER TOWING AND
TRANSPORTATION COMPANY, INC., AS
OWNER OF THE TUGS IONA MCALLISTER
AND JAMES MCALLISTER

McAllister Towing and Transportation Company, Inc.,
Appellant No. 04-3938

———————

IN RE:  PETITION OF MCALLISTER TOWING AND
TRANSPORTATION COMPANY, INC., AS
OWNER OF THE TUGS IONA MCALLISTER
AND JAMES MCALLISTER

Owl International Inc. d/b/a/ Global Associates,
Appellant No. 04-4109

———————

Appeals from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 02-cv-00858)
District Judge:  Honorable Bruce W. Kauffman

———————

Argued September 26, 2005

Before: RENDELL, FUENTES and GARTH, <u>Circuit</u> <u>Judges</u>.

(Filed: December 21, 2005)

---

Jeffrey S. Moller
Jordana Cooper    **[ARGUED]**
Blank Rome
130 North 18th Street
One Logan Square
Philadelphia, PA  19103
   *Counsel for Appellant In Re:  McAllister*
   *Towing & Transportation Company, Inc.*

Raymond T. Letulle    **[ARGUED]**
Cozen & O'Connor
200 Four Falls Corporate Center
P.O. Box 800, Suite 400
West Conshohocken, PA  19428-0900
   *Counsel for Appellant Global Assoc. Inc.*

Stephen G. Flynn    **[ARGUED]**
U.S. Department of Justice
Torts Branch, Civil Division
P.O. Box 14271
Washington, D.C.  20044-4271
   *Counsel for Appellee United States of America*

---

## OPINION OF THE COURT

RENDELL, Circuit Judge.

In this case, we consider the impact of the exclusivity provision of the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8116(c), on third-party contribution claims against the federal government. Pursuant to this provision of FECA, a federal employee's recovery against the United States for injuries that he sustains on the job is limited to the fixed benefits to which he is entitled under the statutory compensation scheme. While the Supreme Court has twice held that the exclusivity provision does not, by its terms, bar contribution claims against the United States by third parties who are sued by such a federal employee, we must determine whether other principles apply to bring about such a bar in the case before us. The District Court held that these contribution claims against the United States were barred because the substantive right to contribution in the maritime law is unavailable where the party against whom contribution is sought enjoys statutory immunity from liability to the injured plaintiff. We agree with the District Court and will therefore affirm.[1]

---

[1] McAllister also appeals the District Court's dismissal of its contract-based claims for indemnification. We conclude that the District Court analyzed these claims properly, see In re McAllister Towing & Transp. Co., No. 02-858, 2004 WL 2009330, at *6-8 (E.D. Pa. Sept. 9, 2004), and need not discuss them in further detail here.

3

# I. Background

This case originates from a failed attempt to tow a retired United States Navy vessel, the USS GUADALCANAL, from the Navy Inactive Ship Maintenance Facility in Philadelphia to another Navy facility in Virginia. The Navy contracted with Owl Associates, Inc., doing business as Global Associates, Inc. ("Global"), McAllister Towing and Transportation Company, Inc. ("McAllister"), and various other private parties to assist in the tow. The USNS MOHAWK was assigned to do most of the towing. During the attempted tow, a portion of the MOHAWK's towing gear assembly broke off and struck Todd Bruemmer, a civilian seaman employee of the United States stationed aboard the USNS MOHAWK, in the side, causing injuries.

Bruemmer and his wife filed a personal injury suit against McAllister and other private parties involved in the tow in the Pennsylvania Court of Common Pleas of Philadelphia County. McAllister responded by filing a Petition for Exoneration from or Limitation of Liability in the District Court pursuant to Rule F of the Federal Rules of Civil Procedure Supplemental Rules on Admiralty and Maritime Claims, which stayed the state court proceedings. Bruemmer and his wife then refiled their claims against McAllister and others in the District Court. McAllister filed a third-party complaint against the United States and Global, the private contractor that arranged the tow, seeking contribution or indemnity for liability on the Bruemmers' claims. Global filed a cross-claim seeking contribution or indemnity against the United States, contending that the United States's negligence contributed to Bruemmer's

4

injuries.

The Bruemmers did not name the United States as a defendant in either their state court or federal court complaint, presumably because the exclusivity provision of FECA immunizes the United States from tort claims by its employees. Like most workers' compensation statutes, FECA guarantees injured federal employees "the right to receive immediate, fixed benefits, regardless of fault and without need for litigation" from their employer, i.e., the federal government, in exchange for statutory immunity from personal injury claims. Lockheed Aircraft Corp. v. United States, 460 U.S. 190, 194 (1983). The relevant portion of the statute provides:

> The liability of the United States or an instrumentality thereof under this subchapter or any extension thereof with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States or the instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States or the instrumentality because of the injury or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute. However, this subsection does not apply to a master or a member of a crew of a vessel.

5 U.S.C. § 8116(c).[2]

The United States moved the District Court for Judgment on the Pleadings on the contribution claims, arguing that FECA's exclusivity provision, described above, prohibited claims for contribution or indemnity against the United States that are based solely on the government's status as a joint tortfeasor. The District Court agreed and granted the government's motion. Analyzing the Supreme Court's decisions in Weyerhaeuser Steamship Co. v. United States, 372 U.S. 597 (1963), and Lockheed Aircraft Corp. v. United States, 460 U.S. 190 (1983), the District Court found that this provision of FECA does not directly bar third-party contribution claims. Its inquiry did not end there, however, because it noted that the substantive law governing the underlying contribution claims may bar such claims. In re McAllister Towing & Transp. Co., No. 02-858, 2004 WL 2009330, at *4-5 (E.D. Pa. Sept. 9, 2004). The District Court concluded that, although the substantive law governing McAllister and Global's contribution claims, the maritime law, recognizes a right of contribution between joint

___

[2]Although the provision's last sentence appears to exclude Bruemmer, the Supreme Court has twice held that FECA's exclusivity provision applies to civilian seamen, effectively reading the last sentence out of the provision. See Johansen v. United States, 343 U.S. 427, 441 (1952) ("All in all we are convinced that the Federal Employees Compensation Act is the exclusive remedy for civilian seamen on public vessels."); see also Patterson v. United States, 359 U.S. 495, 496 (1959) (per curiam) (declining to reconsider Johansen). The parties do not challenge this reading.

6

tortfeasors, that right is unavailable where the tortfeasor against whom contribution is sought enjoys statutory immunity from first-party claims. Id. at *5 (citing Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 342 U.S. 282 (1952) and Cooper Stevedoring Co. v. Fritz Kopke, Inc., 417 U.S. 106 (1974)). Because FECA's exclusivity clause immunizes the United States from Bruemmer's personal injury claims, the Court concluded, application of the substantive law would result in protection of the United States from liability from third-party contribution claims arising out of those claims. Id. at *6.

## II. Discussion

The District Court exercised jurisdiction over this case pursuant to the Suits in Admiralty Act, 46 U.S.C. § 741, et seq., and the Public Vessels Act, 46 U.S.C. § 781, et seq. Our jurisdiction arises out of 28 U.S.C. § 1292(a)(3), which provides for appellate review of interlocutory decrees in admiralty that "determin[e] the rights and liabilities of the parties." Our standard of review of a dismissal under Fed. R. Civ. P. 12(c) is plenary. Hayes v. Cmty. Gen. Osteopathic Hosp., 940 F.2d 54, 56 (3d Cir. 1991).

On appeal, McAllister and Global take issue with each aspect of the District Court's analysis. First, they dispute the District Court's reading of Weyerhaeuser and Lockheed, arguing that those cases stand for the broad proposition that FECA's exclusivity clause was not intended to affect third-party rights. To allow FECA to "indirectly" bar such claims, they contend, violates the spirit of those decisions. Second, they challenge the District Court's analysis of the substantive

7

contribution claim, urging that the Supreme Court cases on which the District Court relied in order to conclude that the maritime common law right of contribution does not allow recovery in this case do not apply.[3]  We will address these arguments by reviewing the case law on which they rely.[4]

In Weyerhaeuser, Weyerhaeuser, a shipowner, sued the United States for damages that it suffered when its vessel

---

[3]Global also argues that the analogous liability provision of the Federal Tort Claims Act ("FTCA"), which allows private parties to hold the United States liable "in the same manner and to the same extent as a private individual under like circumstance," 28 U.S.C. § 2674, allows it to recover here.  As we have previously held, however, a third party may not use the FTCA "to accomplish indirectly what federal employees could not accomplish directly."  Eagle-Picher Indus., Inc. v. United States, 846 F.2d 888, 894 (3d Cir. 1988).  We therefore decline to even consider whether Global would prevail in an analogous claim against a private party, as our case law precludes us from reaching a different result on FTCA grounds here.

[4]We note at the outset that, although many comparisons between FECA's exclusivity provision and limitations on employer liability in state workers' compensation schemes might be drawn, only federal case law is relevant to our task here.  See Newport Air Park, Inc. v. United States, 419 F.2d 342, 347 (1st Cir. 1969) ("In the case of the FECA the immunity is federally created; its extent must be determined by the federal courts, particularly when the issue is one of governmental liability.").

collided with a United States Army vessel. The district court found that the collision resulted from the mutual fault of both ships, and applied the "settled admiralty rule of divided damages" in collision cases, which allows each party to recover one-half of provable damages and court costs from mutual fault collisions. 372 U.S. 597, 598 (1963). The issue before the Supreme Court was whether FECA's exclusivity provision prevented Weyerhaeuser from including a settlement paid to a federal civil service employee who was injured in the collision as part of its damage calculation for purposes of the "divided damages" rule.

The government contended that the language of the exclusivity provision foreclosing liability of the United States to "any other person otherwise entitled to recover damages" applied to preclude the shipowner's recovery of these costs from the United States in a divided damages case. The Court noted that this language followed specific categories of people related to the injured employee, and was not prepared to say that "any other person otherwise entitled" opened Pandora's box to anyone who might have a claim. However, it thought the language confusing enough to warrant an examination of the legislative history. In so doing, it discovered that the purpose behind the exclusivity provision was limited:

> The purpose of s[ection] 7(b), added in 1949, was to establish that, as between the government on the one hand and its employees and their representatives or dependents on the other, the statutory remedy was to be exclusive. There is no evidence whatever that Congress was concerned

9

> with the rights of unrelated third parties, much less of any purpose to disturb settled doctrines of admiralty law affecting the mutual rights and liabilities of private shipowners in collision cases.

Id. at 601. Accordingly, the Supreme Court found no bar against the shipowner's inclusion of the settlement paid to the injured employee in calculating its damages for purposes of the divided damages rule. Id. at 604.

Before Weyerhaeuser, we had held that the language of FECA's exclusivity provision barred a claim for contribution against the United States by a joint tortfeasor for damages paid to an injured government employee. See Drake v. Treadwell Constr. Co., 299 F.2d 789, 790-91 (3d Cir. 1962) ("Contribution of a joint tort-feasor toward the satisfaction of a covered government employee's judgment in tort seems as clearly within the language of Section 7(b) as is total direct liability to the injured employee."). The Supreme Court vacated our judgment and remanded the case for reconsideration in light of Weyerhaeuser. Treadwell Constr. Co. v. United States, 372 U.S. 772 (1963) (per curiam). The Court's remand order left us uncertain as to what to do in the next case before us. We explained our predicament in that case, Travelers Insurance Co. v. United States, where a private party sought indemnity or contribution from the United States for damages paid to an injured government employee:

> Federal courts are in hopeless conflict concerning the proper interpretation of the Weyerhaeuser and Treadwell decisions . . . . The principal source of

10

> this conflict is the broad language in
> Weyerhaeuser that "there is no evidence that
> Congress was concerned with the rights of
> unrelated third parties."

493 F.2d 881, 885 (3d Cir. 1974) (internal citations omitted).

To make sense of this conflict, we surveyed the ways that other courts, faced with this confusion, had reacted. Id. at 885-87. We noted that the Fourth Circuit Court of Appeals, in Wallenius Bremen G.m.b.H. v. United States, 409 F.2d 994 (4th Cir. 1969), had interpreted the Weyerhaeuser language about the rights of third parties to mean that contribution claims are to be affirmatively permitted. Travelers, 493 F.2d at 885-86. In Wallenius, the court found the government's personal defense to suit by an injured worker to be "irrelevant" to the question of its liability for contribution or indemnity claims. 409 F.2d at 998. Most courts, however, had read Weyerhaeuser more narrowly, as saying merely that the exclusivity provision did not create a bar. Under their reading, other principles might still operate to bar contribution claims. We summarized this position as follows:

> [S]ince the United States had no underlying tort
> liability to its injured employee, the exclusivity
> provision of the FECA precludes a third party
> action for contribution or indemnity unless there
> exists a relationship between the third party and
> the United States independent of the tortious
> event, such as the contractual obligation in Ryan
> . . . or the admiralty rule of divided damages in

11

> Weyerhauser, . . . upon which recovery can be grounded.

Travelers, 493 F.2d 886.

We found the opinion of the Court of Appeals for the Ninth Circuit in United Airlines v. Wiener, 335 F.2d 379 (9th Cir. 1964), particularly convincing.[5]  There, the court rejected

---

[5]Although our analysis in Travelers relied primarily on Wiener, we also referred to the opinions of a number of other courts that had considered this issue and reached the same conclusion.  See, e.g., Newport Air Park, Inc. v. United States, 419 F.2d 342, 345, 347 (1st Cir. 1969) (reading Weyerhaeuser as limited to cases where the third party has a "direct right of action" against the government; holding that "contribution cannot be had from the government when the government was under no tort liability to the injured party"); Murray v. United States, 405 F.2d 1361, 1364-65 & n.12 (D.C. Cir. 1968) (acknowledging controversy over meaning of Weyerhaeuser and Treadwell, but affirming district court's dismissal of third-party contribution claim against the government "since contribution is an equitable doctrine imposing a duty on one tortfeasor to another that is applicable only when the tortfeasors have a concurring liability to the same victim"); Busey v. Washington, 225 F. Supp. 416, 421, 424 (D.D.C. 1964) (finding that the Supreme Court "made clear that its decision in the Weyerhaeuser case . . . was limited to admiralty cases involving mutual fault collisions, relying in part at least on the antiquity of the admiralty rule of divided damages"; entering judgment in favor of the United States on third-party contribution claim).

12

United's argument that the Supreme Court's remand in Treadwell indicated a repudiation of the well-settled principle that indemnity claims will fail where there is no underlying first-party liability. Id. at 404. Applying that principle, it found that the absence of an independent basis of liability from the government to United, the third party, was fatal:

> United's claim for indemnity is not based upon a duty owed by the government to United by virtue of a contract, attenuated or otherwise, or by operation of a rule of law such as the divided damage rule of admiralty. There being no underlying liability on the part of the government, United's claim for indemnity must fall.

Id. at 404, quoted in Travelers, 493 F.2d at 887. Finally, we noted that our own jurisprudence prohibited indemnity actions under the Longshoremen's and Harbor Worker's Compensation Act ("LHWCA"). See Brown v. Am.-Haw. S.S. Co., 211 F.2d 16, 18 (3d Cir. 1954) (holding that "there can be no action of indemnity" under the LHWCA "which is not based on the violation of some contractual duty"); Crawford v. Pope & Talbot, 206 F.2d 784, 792 (3d Cir. 1953) (concluding that LHWCA's exclusivity provision does not bar indemnity claims based on the contractual relationship between the employer and the third party because "in such cases the indemnity has a claim which is independent of and does not derive from the injury to the employee").[6] Based on our analysis, we held that the

---

[6]These cases were substantially abrogated by a subsequent amendment to the LHWCA, but, as we noted in Travelers, "their

Travelers plaintiffs could not recover from the United States on "contribution or noncontractual tort indemnity" claims for damages paid in a wrongful death and survival action brought by the widow of a deceased government employee. 493 F.3d at 887.

Nearly a decade after we issued our opinion in Travelers, the Supreme Court was asked to revisit the meaning of the language of FECA's exclusivity provision and clarify its implications. In Lockheed, it essentially held that there were no implications. Recounting its reasoning in Weyerhaeuser, it reinforced that ruling and stated that nothing in the exclusivity provision itself prevented or precluded recovery on any basis or theory by third parties against the government: "To the extent that the basis for the underlying cause of action could make any difference, the indemnity theories on which Lockheed relies are as well-established as the divided damages rule was in Weyerhaeuser." 460 U.S. at 198. Importantly, the Court affirmatively noted that the district court had determined that Lockheed did, indeed, have a right to indemnity under the "governing substantive law." Id. at 199.

In essence, the Court in Lockheed explained that Weyerhaeuser said only that the exclusivity provision was not directed at the situation of the third-party contribution claim–nothing more, nothing less. So we must look, instead, to the underlying cause of action and determine whether it is viable

principles continue to retain vitality for purposes of analyzing the effect of the exclusive remedy provision of the FECA." 493 F.2d at 887 n.9.

14

based on the state of the law, which can include general legal principles as well as a particular statutory scheme. See Eagle-Picher Indus., Inc. v. United States, 846 F.2d 888, 892 n.6 (3d Cir. 1988) ("[T]he viability of . . . third-party actions depend[s] on the underlying substantive law."). Just as the divided damages rule in collision cases had established the principle whereby the damages paid to the injured worker were included in the calculation in Weyerhaeuser, so too the judicially recognized indemnity claim in the fact pattern in Lockheed provided the basis for Lockheed's claim against the government. Thus, the right to contribution or indemnity either does or does not exist as a matter of law, separate and apart from the exclusivity provision.

The courts of appeals that have examined this issue have reached a uniform conclusion, namely, that Lockheed did not, as Appellants contend, establish that the exclusivity provision never affects third-party rights; it merely directed courts to examine the underlying substantive basis of the third parties' claims. See, e.g., Walls Indus., Inc. v. United States, 958 F.2d 69, 71 (5th Cir. 1992); Eagle-Picher Indus., Inc. v. United States, 937 F.2d 625, 634 (D.C. Cir. 1991); Bush v. Eagle-Picher Indus., Inc., 927 F.2d 445, 451 n.9 (9th Cir. 1991); In re All Maine Asbestos Litig., 772 F.2d 1023, 1027 (1st Cir. 1985).

The substantive basis for Appellants' claims in this case is the right of contribution under maritime law. The Supreme Court explained the contours of this right more than a half-century ago in Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 342 U.S. 282 (1952). There, an employee of Haenn Ship Ceiling & Refitting Corporation sustained injuries while he was

15

repairing a ship owned by Halcyon Lines. The employee sued Halcyon, and Halcyon impleaded Haenn as a third-party defendant. We held that Halcyon had a right of contribution, but that Haenn's liability was limited to the amount that it would have had to pay its employee if the employee had elected to claim compensation under the applicable workers' compensation statute, the LHWCA. Halcyon, 342 U.S. at 283 (citing Baccile v. Halcyon Lines, 187 F.2d 403 (3d Cir. 1951)).

Both parties contested our holding before the Supreme Court. Halcyon argued that it had a right to contribution based on the parties' relative degrees of fault, while Haenn disputed whether there was a right of contribution at all; at most, it urged, the right should be based on an equal division of damages in keeping with the admiralty law rule of divided damages that applies in collision cases. Id. at 284. The Court declined to recognize any right of contribution under the circumstances, concluding, in light of the myriad issues involved, and wary of upsetting the intricate schemes for apportioning liability that Congress had developed in the LHWCA and related statutes, that "legislative consideration and action can best bring about a fair accommodation of the diverse but related interests" of the carriers, shippers, employees, and insurance companies that had stakes in the existing statutory compensation scheme. Id. at 286. The Court accordingly concluded that "it would be unwise to attempt to fashion new judicial rules of contribution and that the solution of this problem should await congressional action." Id. at 285.

Later, however, in Cooper Stevedoring Co. v. Fritz Kopke, Inc., 417 U.S. 106 (1974), the Supreme Court

16

recognized a maritime law right of contribution between a vessel and a stevedore in a non-collision context. <u>Cooper</u> arose out of injuries that a longshoreman sustained when he fell into a concealed gap between crates on the vessel where he was working. The longshoreman sued the vessel, and the vessel filed a third-party complaint naming Cooper, the stevedore that had negligently loaded the crates onto the vessel. Importantly, Cooper was not the longshoreman's employer. The issue before the Supreme Court was whether the district court's award of contribution between the vessel and stevedore was cognizable under maritime law. <u>Cooper</u>, 417 U.S. at 107-09. The Court held that it was, but only after making certain to distinguish <u>Halcyon</u>. <u>Id.</u> at 111-13.

Cooper argued that <u>Halcyon</u> precluded the Court from recognizing a right to contribution in its case. <u>Id.</u> at 111. But the <u>Cooper</u> Court construed <u>Halcyon</u> narrowly, finding that the Court's decision in <u>Halcyon</u> was premised on Haenn's LHWCA immunity from liability to the injured plaintiff. <u>See id.</u> at 112. In <u>Cooper</u>, unlike <u>Halcyon</u>, neither party was immune from liability to the plaintiff–the LHWCA did not apply because the plaintiff was not an employee of the vessel or the stevedore. Because the injured longshoreman in <u>Cooper</u> could have held either party, or both, liable for his injuries, the Court held, it only made sense to allow the vessel to recover part of the total damage amount from the negligent stevedore. <u>Id.</u> at 113.

As the District Court here ably explained, <u>In re McAllister Towing & Transp. Co.</u>, No. 02-858, 2004 WL 2009330, at *5 (E.D. Pa., Sept. 9, 2004), the lesson of <u>Halcyon</u> and <u>Cooper</u> is that the maritime law right to contribution among

17

joint tortfeasors in non-collision cases rests on a finding of concurrent responsibility. Cooper, 417 U.S. at 115. Where, as here, the party against whom contribution is sought cannot be held liable to the plaintiff, the basis for mutual responsibility, and thus for contribution, disappears.

McAllister argues that the District Court's reliance on Halcyon and Cooper was misplaced because the Lockheed Court dismissed those cases as "irrelevant." This argument misses the point: Halcyon and Cooper were irrelevant to the Court's analysis in Lockheed because they bear only on the parties' substantive contribution claims. As discussed above, that issue was not presented to the Lockheed Court because the district court had decided that there was a valid indemnity claim, and that determination was not contested on appeal. See Lockheed, 460 U.S. at 198 n.8 ("Since the validity of the substantive indemnity claim is not before us, [Halcyon and Cooper] . . . are entirely irrelevant."). Here, Halcyon and Cooper are relevant and, indeed, controlling on the substantive contribution law issue before us.

Global argues that Halcyon and Cooper are "inapplicable" to this case because they involve immunity from tort liability under LHWCA, not FECA. As Global points out, LHWCA specifically prohibits third-party claims, see Lockheed, 460 U.S. at 198, while FECA does not. But LHWCA was only amended to prohibit third-party liability in 1972; Halcyon was decided in 1952. The Supreme Court described LHWCA's exclusivity provision before the 1972 amendment as "nearly identical" to FECA's. Weyerhaeuser, 372 U.S. at 602. Thus, the 1972 amendments to LHWCA do not provide a legitimate

18

basis for distinguishing <u>Halcyon</u> and <u>Cooper</u> from this case.

Post-<u>Cooper</u> case law reinforces our conclusion that <u>Halcyon</u> and <u>Cooper</u> foreclose Appellants' contribution claims here. As the District Court noted, "[a]lmost every circuit that has analyzed contribution law for joint tortfeasors . . . has applied the reasoning in <u>Cooper</u>." <u>In re McAllister Towing</u>, 2004 WL 2009330, at *5. In fact, two courts of appeals have specifically held that the government's FECA immunity from suit by the underlying tort victim precludes third-party contribution actions based on the applicable substantive law. In <u>Eagle-Picher Industries, Inc. v. United States</u>, 937 F.2d 625 (D.C. Cir. 1991), the Court of Appeals for the District of Columbia Circuit, applying the <u>Halcyon</u> / <u>Cooper</u> rule, concluded that private third parties could not recover in contribution actions against the government for damages paid to federal shipyard workers covered by FECA because "under maritime common law [FECA's] statutory immunity from first-party liability shields the government . . . as well from third-party actions." <u>Id.</u> at 635. And the Court of Appeals for the Fifth Circuit upheld a district court's dismissal of a private party's contribution claim against the United States in a case with facts strikingly similar to the one before us. In <u>Walls Industries, Inc. v. United States</u>, 958 F.2d 69 (5th Cir. 1992), as in this case, the private party's contribution claim arose out of its liability for injuries that a federal civilian employee sustained while working on a United States vessel. <u>Id.</u> at 71-72. The court there reasoned that "[c]ontribution and indemnity are available only if the joint tortfeasors share a common liability to the plaintiff," <u>id.</u> at 71, and that no common liability existed in that case because FECA rendered "the United States . . .

19

immune from suit by the first-party plaintiff." Id. at 72. While we have not had the opportunity to address the substantive contribution issue since Cooper, our pre-Cooper analysis of the issue (see Travelers, discussed above) actually anticipated Lockheed's directive to look to the underlying substantive law and the precise approach to the substantive law question employed by the Courts of Appeals for the D.C. and Fifth Circuits in Eagle-Picher and Walls.

Appellants have cited only one case, Wallenius Bremen G.m.b.H. v. United States, 409 F.2d 994 (4th Cir. 1969), that supports their view that liability for contribution claims does not turn on the indemnitor's first-party liability to the injured person. We rejected that court's reasoning in Travelers and continue to find it unpersuasive now. First, as discussed above, Wallenius runs counter to the weight of authority, both before and after Cooper. See, e.g., Walls, 958 F.2d at 71-72; Eagle-Picher, 937 F.2d at 635; Travelers, 493 F.2d at 886-87; United Air Lines, Inc. v. Wiener, 335 F.2d 379, 403 (9th Cir. 1964). Second, and more importantly, Wallenius was decided five years before Cooper. Although the Supreme Court in Lockheed left the substantive indemnity law question open, it resolved that question, at least with respect to maritime law contribution claims, in Cooper. We are accordingly bound to apply Cooper here. Where the substantive law makes the existence or non-existence of the government's liability to the first party relevant, we cannot conclude, as the Fourth Circuit Court of Appeals did in Wallenius, that it is "irrelevant."

Finally, although the parties have not focused on the policy implications of this decision, we note that the result urged

20

by the Appellants would undermine FECA's objectives. Like other workers' compensation schemes, FECA serves a dual purpose: "to provide for employees 'a remedy which is both expeditious and independent of proof of fault, but also for employers a liability which is limited and determinate.'" Busey v. Washington, 225 F. Supp. 416, 423 (D.D.C. 1964) (quoting Bradford Elec. Light Co. v. Clapper, 286 U.S. 145, 159 (1932)). To further this second purpose, FECA contains a recoupment provision, 5 U.S.C. § 8132, which requires an injured employee who receives damages from a third party to refund any benefits he received under the statute to the United States. Allowing third parties to recover on contribution claims against the United States for damages paid to injured federal employees frustrates the purpose of the recoupment provision, see Newport Air Park, Inc. v. United States, 419 F.2d 342, 348 (1st Cir. 1969) (Coffin, J., concurring), and undermines the entire statutory scheme by subjecting the United States to unlimited and indeterminate liability for injuries to its employees. Busey, 225 F. Supp. at 423. Cf. Stencel Aero Engineering Corp. v. United States, 431 U.S. 666, 673 (1977) (finding that to permit third-party recovery on an indemnity claim against the United States for benefits paid to an injured National Guard officer would circumvent the limitation-of-liability provisions of the Veterans' Benefit Act, a "statutory 'no fault' compensation scheme" similar to FECA). Appellants have advanced no compelling justification for subverting the statutory scheme in this way.

Given the Supreme Court's directive in Cooper that the maritime law right to contribution is dependent on the indemnitor's first-party liability, the consensus among the courts of appeals that have considered the issue and found that the

21

United States's immunity from first-party liability destroys third-party contribution rights, our own, pre-<u>Cooper</u> analysis of this issue, and our understanding of the purpose of FECA's exclusive liability provision, there is no basis on which we would break new ground here. We agree with the District Court that Appellants' remedies against the United States depend on the United States's liability for the underlying injury. Because FECA immunizes the United States from such liability, there can be no claim for contribution as a matter of law.[7]

## III. Conclusion

For all of the reasons discussed above, we conclude that the District Court's grant of the United States' Motion for Judgment on the Pleadings was proper. We will accordingly affirm the District Court's order.

---

[7]At oral argument, the parties debated the equities of this result in light of the fact that evidence indicates that the United States was at least partly at fault for the accident that caused Bruemmer's injuries. We have not considered those arguments because we conclude that, given the statutory scheme and case law, and considering their application as we have reviewed above, the equities to not play a role in the analysis before us.